**Judy FRATTER, Individually as surviving Spouse and personal Representative of the Estate of Joseph J. Fratter, Appellant–Plaintiff,**

v.

**Stanley RICE, Physician Assistant, and Larry Ratts, M.D., Appellees–Defendants.**

**No. 53A04–1101–CT–10.**

Court of Appeals of Indiana.

Sept. 19, 2011.

---

Richard Hailey, Marybeth Ramey, Justin W. Leverton, Ramey & Hailey Law Firm, Indianapolis, IN, Attorneys for Appellant.

Edward J. Liptak, Carson Boxberger LLP, Bloomington, IN, Attorney for Appellee Larry D. Ratts, MD.

Jeffrey A. Boyll, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, LLP, Terre Haute, IN, Attorney for Appellee Stanley Rice.

## OPINION

BAKER, Judge.

When the plaintiff went to the defendant-physician's office complaining of pressure and tenderness in his stomach, the physician's assistant performed an examination, administered an EKG, and interpreted those results to be nonspecific. The physician's assistant did not send the results to the doctor for an interpretation

of the tests, a review of the charts, or for consideration as to whether the plaintiff should be referred to the hospital. Several hours after the plaintiff returned home, he died of a heart attack. An autopsy revealed the presence of gastritis and evidence of a heart attack. In the end, the jury determined that neither the physician nor his assistant were responsible for the plaintiff's death. Although the plaintiff suggests otherwise, we hold, among other things, that the trial court properly read the relatively new Indiana Model Civil Jury Instruction that defines "responsible cause" to the jury, rather than the Indiana Pattern Jury Instruction regarding proximate cause.

Appellant-plaintiff Judy Fratter, individually and as surviving spouse and personal representative of the estate of Joseph J. Fratter (Joseph), deceased, appeals a jury verdict entered in favor of appellees-defendants Stanley Rice and Larry D. Ratts, M.D. Specifically, Fratter argues that she is entitled to a new trial because the removal of one of the jurors on the second day of trial was error, that the trial court erred in giving a final instruction on "responsible cause," that it was error to permit Rice to display a "scales of justice" demonstrative exhibit to the jury during closing argument, and that the motion to correct error was erroneously denied on the basis of newly discovered evidence. Finding that Fratter was not entitled to a new trial, we affirm the judgment of the trial court.

### FACTS

Sometime during the evening of March 21, 2001, Joseph went to Dr. Ratts's office in Bloomington complaining of abdominal pressure that had continued for nearly two days. Joseph experienced some tenderness on his upper belly when Rice, Dr. Ratts's assistant, examined him. Although the symptoms appeared only gastric in nature, Rice recommended that Joseph undergo an EKG. Although Rice determined those results to be nonspecific, he did not send them to Dr. Ratts for analysis, nor did he consult with Dr. Ratts regarding Joseph's family history, or whether Joseph should be referred to a hospital for further testing.

Following the examination, Joseph returned home and suffered a fatal heart attack shortly thereafter. An autopsy revealed moderate acute gastritis and evidence of a heart attack.

Fratter filed a proposed complaint with the Indiana Department of Insurance on June 26, 2002. The medical review panel that consisted of three physicians issued its opinion in August 2008, finding that the evidence supported a determination that Dr. Ratts and Rice failed to meet the applicable standard of care as charged in the complaint.

On November 6, 2008, Judy filed her complaint against Rice and Dr. Ratts in the trial court, alleging medical malpractice and negligence. At some point during the pendency of the case, Dr. Ratts sold his medical practice, and Rice was terminated by the purchaser of Dr. Ratts's practice.

On May 17, 2010, the Medical Licensing Board (Board) filed a complaint against Dr. Ratts, alleging, among other things, that Dr. Ratts had failed to supervise Rice. Thereafter, the original case proceeded to jury trial on October 18, 2010. On the second day of trial, juror Scott Cornell handed a note to the bailiff, which stated "I remembered this morning a similar situation which can influence me negatively to the defense. I apologize." Appellant's App. p. 49. The trial judge called Cornell into the courtroom for examination outside the presence of the jury. After being sworn in, Cornell stated on the record that

I went [to Promptcare or First Health] because I was having [a] swollen throat and ... I was having trouble keeping food down and as I went in there, and I don't have any idea, who the person I, whether it was a doctor, nurse, or whatever, but they told me that basically it was just a respiratory, upper respiratory infection and I would be given antibiotics and, ah, that should clear it up in a few days or whatever.... [B]efore I left, some other person happened to, I don't know, view the case or review the file or whatever and said that instead of giving me the antibiotics I should actually go to the Bloomington ER just to have, I think I wrote MRI but it was actually an X-ray instead of, you know, just a, just to double check or whatever, ah, and so I did that and I went to the ER and they found that I had ... stage three ... lymphoma and ah, they referred me ... to Doctor Jackie Joyce and, you know, ... that might influence me, since the case it seems like it's kinda similar in this case.

Appellant's App. p. 52–53. When the trial judge asked Cornell if he could continue being fair and impartial, Cornell responded: "I would like to think that I could, but I'm not sure that I can because I'm sort of like leaning one way now, and it's not that time to lean one way or not." *Id.* at 54. However, Cornell did indicate that he would refrain from sharing his personal story with the other jurors. At the conclusion of the questioning, the trial court excused Cornell over Fratter's objection. The trial court noted Cornell's medical treatment that was similar to Joseph's in that two different opinions were rendered. It was also observed that Cornell was not sure if he could be fair, and was leaning towards a verdict in Fratter's favor.

At some point during the trial, Fratter sought to introduce evidence of the lack of supervision by Dr. Ratts over Rice, but was precluded from doing so. At the conclusion of the evidence, the trial court read a "responsible cause" final instruction to the jury, over Fratter's objections. This instruction provided that

> A person's conduct is legally responsible for causing death if:
>
> > (1) the death would not have occurred without the conduct, and
> >
> > (2) the death was a natural probable, and foreseeable result of the conduct.
>
> This is called a "responsible cause."

Appellant's App. p. 37.

During Rice's closing argument, the trial court permitted counsel to use a sketch of the scales of justice as a demonstrative exhibit. More specifically, Rice's counsel placed a large easel in front of the jury panel and placed a paper easel pad on it. The words "standard of care" were written across the top of the drawing. *Id.* at 221–22. On one side of the scales of justice sketch were the names of three of Fratter's expert witnesses. On the other side of the scale, the names of six expert witnesses for the defense were written on it. One of the physicians who determined that Rice and Dr. Ratts had breached the standard of care was omitted from this exhibit. The exhibit showed that the scales tipped very heavily in favor of Rice and Dr. Ratts, and a large question mark was placed below the drawing. Fratter objected to the exhibit on the grounds that it misstated both the law and the evidence. The trial court overruled the objection and Rice's counsel proceeded to discuss the fact that there were nearly "twice as many" defense witnesses. *Id.* at 66.

The jury returned a verdict in favor of Rice and Dr. Ratts on October 22, 2010. Thereafter, Fratter filed a motion to correct error on the basis of newly discovered evidence. In support of that motion, Fratter alleged that less than one week after

the verdict was entered, Dr. Ratts agreed to surrender his license to practice medicine in Indiana. At that time, Dr. Ratts stipulated that he had failed to "properly supervise Rice as a physician assistant or review Rice's charts in the required 24 hour period." Appellants' App. p. 198. Fratter asserted that had the jury heard evidence about Dr. Ratts's lack of supervision of Rice and the surrender of his medical license, the result of the trial probably would have been different.

The trial court denied the motion to correct error on December 16, 2010, and Fratter now appeals.

### DISCUSSION AND DECISION

#### I. Juror Dismissal

■ Fratter argues that the trial court erred in removing juror Cornell from the panel. Specifically, Fratter maintains that it was error to excuse Cornell because he was confident that he could "put aside his biases in deciding a case." Appellant's Br. p. 10. Fratter also claims that Cornell's prior medical condition or experience was an "insufficient reason for removal." *Id.*

■ The standard of review regarding a trial court's decision to remove a juror after a trial has begun is abuse of discretion. *Scott v. State*, 829 N.E.2d 161, 167 (Ind.Ct.App.2005). Once deliberations begin, the discharge of a juror is warranted only in the most extreme situations where it can be shown that the removal of the juror is necessary for the integrity of the process, does not prejudice the deliberations of the rest of the panel, and does not impair the parties' right to a trial by jury. *Riggs v. State*, 809 N.E.2d 322, 327–28 (Ind.2004).

As discussed above, the trial court disclosed the nature of Cornell's note to all counsel. The attorneys and the trial judge questioned Cornell, where he acknowl-

edged that he had nearly become the victim of a missed diagnosis, which was a central issue in this case. The similarities of that situation and the circumstances here disturbed Cornell. While Cornell wanted to be fair to both sides, he admitted that he was no longer "totally" impartial. When the trial judge asked Cornell if he could remain fair and impartial in the case, he responded, "I would like to think that I could, *but I'm not sure that I can because I'm sort of like leaning one way now,* and it's not that time to lean one way or not." Appellant's App. p. 54 (emphasis added). In other words, while Cornell promised that he would try to remain impartial, he expressed reservations about doing so on several occasions. Cornell struggled with his ability to remain impartial, and that is why he approached the trial court and expressed his concern about impartiality. *Id.* at 55–57.

In short, it is apparent that the circumstances demonstrate that Cornell was struggling with his desire to be impartial and his fear that he could not do so because of his own past experiences. The trial court established an appropriate record documenting Cornell's concerns and afforded counsel the opportunity to question Cornell before it made a decision about his possible removal. In short, we decline to conclude that the trial court erred in excusing Cornell from the jury.

#### II. Responsible Cause Jury Instruction

Fratter argues that the trial court erred in giving the "responsible cause" jury instruction because it misstates Indiana law. Appellant's Br. p. 7. Fratter maintains that this instruction does not adequately define the element of proximate cause and erroneously creates a higher burden of proof for Fratter.

■ When reviewing a trial court's decision to give or refuse a tendered in-

struction, we consider whether the instruction: (1) correctly states the law; (2) is supported by the evidence in the record; and (3) is covered in substance by other instructions. *Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891, 893 (Ind.2002). The trial court has discretion in instructing the jury, and we will reverse on the last two issues discussed above only when the instructions amount to an abuse of discretion. *Id.* However, when an instruction is challenged as an incorrect statement of the law, we review the ruling de novo. *Id.* at 893–94.

■ In this case, the trial court indicated that it intended to use the new Indiana Model Civil Jury Instructions, rather than the Indiana Pattern Jury Instructions. As set forth above, Fratter challenges the following final instruction:

A person's conduct is legally responsible for causing death if:

(1) the death would not have occurred without the conduct, and

(2) the death was a natural probable, and foreseeable result of the conduct.

This is called a "responsible cause."

Appellant's App. p. 37.

■ Even though Fratter argues that the responsible cause instruction misstates the law, it closely tracks our Supreme Court's definition of proximate cause:

Proximate cause has two components: causation-in-fact and scope of liability. To establish factual causation, the plaintiff must show that but for the defendant's allegedly tortious act or omission, the injury at issue would not have occurred. The scope of liability doctrine asks whether the injury was a natural and probable consequence of the defendant's conduct, which in light of the

circumstances, should have been foreseen or anticipated.

*Kovach v. Caligor Midwest,* 913 N.E.2d 193, 197–98 (Ind.2009).

Also, while Fratter contends that the instruction is insufficient because it does not contain the word "omission," the term "conduct" as used in the instruction certainly includes both acts and omissions. It is Rice's conduct in treating Joseph and whether that conduct breached the standard of care that are at issue. In short, both the causation-in-fact and scope of liability elements are covered by the responsible cause jury instruction.

■ Also, even assuming solely for the sake of argument that this instruction was erroneous, any alleged error was cured in another instruction that the trial court gave. More specifically, instruction eleven states that:

Negligence is the failure to use reasonable care.

*A person may be negligent by acting or by failing to act.* A person is negligent if he or she does something a reasonably careful person would not do in the same situation, or fails to do something a reasonably careful person would do in the same situation.

Reasonable care means being careful and using good judgment and common sense.

Appellant's App. p. 31 (emphasis added).

In light of the above, any possible error in the responsible cause instruction was cured because the jury was sufficiently informed that a person may be negligent by failing to act. For all these reasons, we reject Fratter's claim that the trial court erred in giving that instruction.[1]

1. As an aside, we note that our Supreme Court recognized the new "reasonable cause" instruction in *Green v. Ford Motor Co.,* 942 N.E.2d 791 (Ind.2011). Specifically, it was observed that

### III. Scales of Justice Exhibit

■ Fratter next claims that the trial court erred in permitting Rice to use the "scales of justice" exhibit during closing argument. Appellant's Br. p. 17–20. Specifically, Fratter claims that the contents of the exhibit grossly misstated the evidence and was highly prejudicial.

■ Demonstrative evidence is offered for purposes of illustration and clarification. *Null v. State*, 690 N.E.2d 758, 761 (Ind.Ct.App.1998). To be admissible, the evidence must be sufficiently explanatory or illustrative of relevant testimony to be of potential help to the trier of fact. *Wise v. State*, 719 N.E.2d 1192, 1196 (Ind. 1999). The admissibility of demonstrative evidence, like all evidence, is also subject to the balancing of probative value against the danger of unfair prejudice. *Berry v. State*, 715 N.E.2d 864, 867 (Ind.1999). The trial court's decision regarding the admissibility of a demonstrative exhibit is reviewed under an abuse of discretion standard. *Wise*, 719 N.E.2d at 1196.

■ In resolving the issue that Fratter presents regarding the scales of justice exhibit, we note that a specific objection is generally required to preserve an alleged error for appellate review. *Raess v. Doescher*, 883 N.E.2d 790, 797 (Ind.2008). Moreover, the objection must be made on the record to preserve the matter for appeal. *Mulroe v. Angerman*, 492 N.E.2d 1077, 1080 (Ind.Ct.App.1986).

In this case, Fratter made *some* type of objection to the scales of justice diagram during closing argument. However, the grounds for the objection and the argu-

ment regarding the objection occurred off the record. Appellant's App. p. 66. And Fratter admits that the objection was not on the record. Thus, we cannot determine what the specific objection was, and whether there were adequate grounds to support it. In short, Fratter has waived the issue.

■ Also, to the extent that Fratter contends that her objection to the exhibit pertained to the "weighing" of expert witnesses by pointing out the number of witnesses on each side, misstatements of law that are made during closing arguments are presumed cured by a final instruction. *Hudgins v. State*, 451 N.E.2d 1087, 1091 (Ind.1983). Here, the trial court instructed the jury that

> Evidence is of the greater weight if it convinces you most strongly of its truthfulness. In other words, it is evidence that convinces you that a fact is more probably true than not true.
>
> A greater number of witnesses testifying to a fact on one side or a greater quantity of evidence introduced on one side does not necessarily amount to the greater weight of the evidence.

Appellant's App. p. 23. Rice's counsel also read the jury the portion of the instruction regarding the number of testifying witnesses in relation to the quantity of the evidence and the weight of the evidence. Counsel also pointed out that the number of witnesses was one factor for the jury to consider and then asked the jury to "look at each of those individual opinions from the nine experts you heard from and ask yourself, well, they're different, so is there any reason, how can I reconcile this?" Appellant's Br. p. 17–18. In our view,

---

The new Indiana Model Civil Jury Instructions, which seek to provide guidance to juries using 'plain English' recommends the avoidance of the term 'proximate cause' by including the concept as part of the term 'responsible cause.' . . . .

*Id.* at 795 n. 1. Although the validity of the instruction was not at issue in *Green*, we surmise that it has been tacitly approved in light of the above comments.

Fratter has failed to show that either the chart or counsel's comments about the chart misstated Indiana law. Also, even if it could be said that there was a mischaracterization of the evidence, Fratter's counsel could have commented about it in his rebuttal argument. Thus, we conclude that the trial court did not err in overruling Fratter's objection to Rice's use of the scales of justice exhibit during final argument.

### IV. Motion to Correct Error

██ Finally, Fratter claims that the trial court erred in denying her motion to correct error. Specifically, Fratter argues that the newly discovered evidence regarding Dr. Ratts's alleged failure to supervise Rice and the fact that Dr. Ratts surrendered his medical license one week after the jury entered its verdict is relevant to the issues at trial.

 The purpose of a motion to correct error is to call to the trial court's attention errors committed at trial, in order to give the trial court an opportunity to correct them. *Stewart v. State,* 548 N.E.2d 1171, 1175 (Ind.Ct.App.1990). A trial court's decision to grant or deny a motion to correct error is highly discretionary. *Kirchoff v. Selby,* 703 N.E.2d 644, 648 (Ind.1998). Whether to grant a new trial on the grounds of newly discovered evidence is within the trial court's discretion and we will reverse only for an abuse of that discretion. *Kimmel v. State,* 275 Ind. 575, 418 N.E.2d 1152, 1157 (1981). An abuse of discretion will be found when the trial court's action is against the logic and effect of facts and circumstances before it and the inferences which may be drawn therefrom. *DeVittorio v. Werker Bros., Inc.,* 634 N.E.2d 528, 530 (Ind.Ct. App.1994).

 Before a new trial will be granted on the basis of newly discovered evidence, the appellant must show that the evidence could not, with reasonable diligence, have been discovered and produced at trial. *Bubb v. State,* 434 N.E.2d 120, 123 (Ind.Ct.App.1982). The appellant must establish that the evidence is material and relevant and not merely cumulative or impeaching, that it is not privileged or incompetent, that due diligence was used to discover it in time for trial, that it is worthy of credit, and that it raises a strong presumption that it will probably produce a different result upon retrial. *Id.* The trial judge may consider the weight that a reasonable trier of fact might give the newly discovered evidence and evaluate its probable impact. *Emerson v. State,* 259 Ind. 399, 287 N.E.2d 867 (Ind.1972).

As noted above, Dr. Ratts did not surrender his medical license until after the trial concluded. Accordingly, this was not evidence that existed at the time of trial. *See Cassidy v. Johnson,* 41 Ind.App. 696, 84 N.E. 835, 837 (Ind.App.1908) (recognizing that newly discovered evidence is evidence in existence at the time of trial). Moreover, Fratter has failed to demonstrate that the surrender of Dr. Ratts's medical license or his alleged failure to supervise Rice was relevant and could have caused a different outcome in this case.

More specifically, the relevant issues in this case were:

1. Whether the care that was provided to Joseph on March 21, 2001 complied with the standard of care for a physician assistant practicing family medicine;

2. Whether any failure to comply with the standard was a responsible cause of injuries to Joseph; and

3. The nature and extent of any such injury.

The jury determined that Rice was not liable for Joseph's death. Appellant's App. p. 15. And it was required to find that Rice had breached the standard of care and was negligent before there could be a finding that Dr. Ratts was liable under the principles of vicarious liability. *See Cherokee Air Products, Inc. v. Burlington Ins. Co.*, 887 N.E.2d 984, 989 (Ind.Ct.App.2008) (holding that when the principal's liability is based on the acts of the agent, no liability can be imputed to the principal if the agent is released of liability). Also, Indiana Code section 25–27.5–6–7, provides that

> If a physician assistant is employed by a physician, a group of physicians, or another legal entity, the physician assistant must be supervised by and be the legal responsibility of the supervising physician. The legal responsibility for the physician assistant's patient care activities are that of the supervising physician, including when the physician assistant provides care and treatment for patients in health care facilities. If a physician assistant is employed by a health care facility or other entity, the legal responsibility for the physician assistant's actions is that of the supervising physician. A physician assistant employed by a health care facility or entity must be supervised by a licensed physician.

It is undisputed that Dr. Ratts did not render any treatment to Joseph on March 21, 2001. Thus, the issue of noncompliance of the standard of care applied only to Rice. Even if it was established that Dr. Ratts failed to supervise Rice, the absence of supervision could not have given rise to Dr. Ratts's responsibility for Joseph's death in these circumstances. In other words, Dr. Ratts's liability here was contingent on the liability of Rice, and Rice was not liable for Joseph's death. Therefore, because Dr. Ratts was not liable, the surrender of his medical license—whether or not it related to his supervision of physician assistants—is not relevant to Fratter's claim. For all these reasons, we conclude that the trial court did not err in denying Fratter's motion to correct error.

The judgment of the trial court is affirmed.

BRADFORD, J., and BROWN, J., concur.