## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANTS

Fronse W. Smith, Jr.
Mishawaka, Indiana

ATTORNEY FOR APPELLEES

Andrew S. Williams
Hunt Suedhoff Kalamaros, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Equity Trust Company, Custodian FBO Linda R. Smith, Accounts #71474 and #75695, Equity Trust Company, Custodian FBO Fronse W. Smith, Jr., Account #75961, Linda R. Smith, and Fronse W. Smith, Jr.

*Appellants-Plaintiffs,*

v.

James P. Knepp and Andrea K. Slagh d/b/a Hahn, Walz & Knepp

*Appellees-Defendants.*

November 5, 2015

Court of Appeals Case No. 71A03-1411-PL-393

Appeal from the St. Joseph Circuit Court

The Honorable Michael G. Gotsch, Judge

Trial Court Cause No. 71C01-1206-PL-127

**Bradford, Judge.**

# Case Summary

[1] In 2009, Appellants-Plaintiffs Linda and Fronse Smith ("the Smiths") used three retirement accounts[1] to purchase several tax liens on properties located in South Bend, Indiana. The Smiths retained Appellees-Defendants James Knepp and Andrea Slagh d/b/a Hahn, Walz & Knepp (collectively "HWK") as counsel to assist in providing statutorily required notice of the tax sale to interested parties as was required for them to obtain tax deeds on the properties. HWK failed to provide the proper notice by the statutory deadline. In 2012, the Smiths filed suit against HWK for malpractice. HWK conceded that they were negligent in failing to provide the proper notice, however, they contested the amount of damages suffered by the Smiths.

[2] The case was tried to a jury who returned a verdict in favor of the Smiths in the amount of $26,098.26. On appeal, the Smiths argue that (1) the trial court erred by instructing the jury that the Smiths had a duty to mitigate their damages, (2) the trial court abused its discretion in excluding testimony regarding HWK's malpractice insurance limits, and (3) whether there was sufficient evidence to support the jury award. We affirm.

---

[1] The three IRAs were identified as Equity Trust Company, Custodian FBO Linda R. Smith, #71474 and #75695, and Equity Trust Company, Custodian FBO Fronse W. Smith, Jr., Account #75961.

## Facts and Procedural History

On October 29, 2009, the Smiths purchased seven tax-lien certificates at a tax sale auction for properties located in South Bend. In order to obtain title to the properties, the Smiths were required to provide notice of the tax sales to any parties who had an interest in the properties (e.g. owner of record, lienholders, mortgagees, etc.) within nine months after the date of sale.[2] The Smiths retained HWK as legal counsel to assist in sending notice to the interested parties. With respect to four of the properties, Slagh admitted that it was her duty to provide the "nine month notice" to the interested parties by July 29, 2010, and that those notices were not sent until mid-August of 2010. Tr. p. 207. HWK notified the Smiths of the belatedly-sent notices and, in a meeting with Fronse Smith ("Smith") in November of 2010, Knepp offered to write the Smiths a

---

[2] Indiana Code section 6-1.1-25-4.5 (2009) provided as follows:

> (a) Except as provided in subsection (d), a purchaser or the purchaser's assignee is entitled to a tax deed to the property that was sold only if:
>
> > (1) the redemption period specified in section 4(a)(1) of this chapter has expired;
> >
> > (2) the property has not been redeemed within the period of redemption specified in section 4(a) of this chapter; and
> >
> > (3) not later than nine (9) months after the date of the sale:
> >
> > > (A) the purchaser or the purchaser's assignee; or
> > >
> > > (B) in a county where the county auditor and county treasurer have an agreement under section 4.7 of this chapter, the county auditor;
> >
> > gives notice of the sale to the owner of record at the time of the sale and any person with a substantial property interest of public record in the tract or real property.

Pursuant to Indiana Code section 6-1.1-25-4 (2009), the redemption period was one year from the date of sale.

check for the purchase price of the tax liens so that they could purchase additional liens to mitigate their damages. The Smiths declined Knepp's offer.

[4] On June 27, 2012, the Smiths filed suit against Knepp and Slagh for legal malpractice. The Smiths sought to recover the fair market value of the properties or, in the alternative, the money they invested in the properties plus an additional amount for time and effort in researching properties prior to the tax sale. HWK conceded liability but contested the amount of the Smiths' damages. A jury trial was held from July 22-24, 2014.

[5] At the pretrial conference, the trial court heard argument concerning the parties' various motions in limine. The Smiths have not included any of the parties' motions in limine in their appendix. Although it is somewhat unclear, it appears that the Smiths' motion in limine at issue sought to prevent any discussion of HWK's defense that the Smiths had a duty to mitigate their damages. The trial court denied the Smiths' motion in limine.

[6] At trial, the Smiths presented the testimony of expert witness Sharon LeVeque who conducted retrospective appraisals of the four properties in 2014 to estimate the market value of the properties as of December 31, 2010. LeVeque determined the combined value of the properties, as of 2010, to be $215,500.00. LeVeque did not go inside any of the properties and did not know the condition of the inside of the properties, or the condition of the properties in general as of 2010, when conducting her appraisals. LeVeque assumed that the properties

were in "average" condition, tr. p. 446, however, she later stated that tax sale properties often require tens of thousands of dollars in rehabilitation.

[7]     HWK presented expert testimony of appraiser Phillip Krause who disagreed with LeVeque's appraisals. Krause averred that LaVeque's appraisals were flawed because she lacked tax sale data to find comparable properties, that houses facing tax sale are often in significant disrepair, and that an appraiser cannot accurately estimate the cost of repairs without examining the interior of the property.

[8]     Prior to closing arguments, the Smiths requested permission to present testimony regarding HWK's malpractice insurance and the policy limits thereof for impeachment purposes. Smith testified, outside the presence of the jury, as to an exchange between himself and Knepp at the meeting in November of 2010.

> So [Knepp] said; 'why don't you tell us what you have in these properties.' And I said; 'well, you guys have malpractice insurance for this kind of thing, don't you?' And he said; 'yes.' And then I said; 'well, how much?' And he said; 'I believe we have a million dollars.' And then he said; 'so, yeah, when do you think you can get me this number?' I said; 'I have final exams, and we'll get back to you.'

Tr. p. 667.[3]  The Smiths argued that the jury should be able to hear this evidence for purposes of impeaching Knepp's testimony that he did not recall the parties discussing HWK's "financial responsibility" beyond his offer to reimburse the Smiths.  Tr. p. 646.  The trial court allowed Smith to testify generally that HWK's malpractice insurance was discussed but that he could not testify to the specific limits thereof, finding that the relevance of the coverage amount was outweighed by its prejudicial effect.

[9]  Before issuing the final instructions to the jury, the trial court asked the parties if they wanted to make any record concerning the instructions, to which the parties replied that they did not.  The trial court issued the following jury instruction regarding mitigation of damages.

> Plaintiffs must use reasonable care to minimize their damages after they are injured.  Plaintiffs may not recover for any item of damage or loss that they could have avoided through the use of reasonable care.  The defendants have the burden of proving by the greater weight of the evidence that plaintiffs failed to use reasonable care to minimize their damages or loss.

Tr. p. 716.

---

[3] We note however that, at the pretrial conference, both Smith and his counsel averred that specific amounts of insurance coverage were not mentioned during this meeting.

On July 24, 2014, the jury returned a verdict for the Smiths in the amount of $26,098.26. On August 28, 2014, the Smiths filed a motion to correct error, which the trial court denied on October 13, 2014.

# Discussion and Decision

The Smiths raise three issues on appeal: (1) whether the trial court erred by instructing the jury that the Smiths had a duty to mitigate their damages; (2) whether the trial court abused its discretion in excluding testimony regarding HWK's malpractice insurance limits; and (3) whether there was sufficient evidence to support the jury award.

## I. Jury Instructions on Mitigation

"When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto." Ind. Appellate Rule 46(A)(8)(e). A party's failure to "set out verbatim its objection to the instructions" waives the issue for appellate review. *Elkhart Cmty. Sch. v. Yoder*, 696 N.E.2d 409, 413 (Ind. Ct. App. 1998). Furthermore, "No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Ind. Trial Rule 51(C). "The objection must be made on the record to preserve the matter for appeal." *Fratter v. Rice*, 954 N.E.2d 497, 505 (Ind. Ct. App. 2011).

[13] Although the Smiths claim they objected to the mitigation instruction at trial, they do not set out verbatim their objections. In fact, there is no indication that the Smiths' objected to the mitigation instruction at any point during the trial. Before proceeding to final arguments, the trial court asked the parties if they had any issue with the jury instructions (which included an instruction on the Smiths' duty to mitigate), to which counsel for both parties replied that they did not.

[14] In addition to arguing that they objected to the instruction at trial, the Smiths also point to their arguments at the pretrial conference regarding the Smiths' motion in limine concerning mitigation. Apparently, the Smiths argue on appeal that their pretrial arguments, and/or their motion in limine, amounts to an objection sufficient to preserve the argument on appeal. However, "[o]nly trial objections, not motions in limine, are effective to preserve claims of error for appellate review." *Walnut Creek Nursery, Inc. v. Banske*, 26 N.E.3d 648, 653 (Ind. Ct. App. 2015) (quoting *Raess v. Doescher*, 883 N.E.2d 790, 796-97 (Ind. 2008)).

## II. Exclusion of Evidence Regarding HWK's Malpractice Insurance Limits

[15] We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Lanni v. Nat'l Collegiate Athletic Ass'n*, 989 N.E.2d 791, 797-98 (Ind. Ct. App. 2013). We will reverse a trial court's decision to admit or exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual

deductions to be drawn therefrom. *Id*. at 798. Additionally, the trial court's decision will not be reversed unless prejudicial error is shown. *Id*.

[16] The Smiths argue that the trial court abused its discretion by limiting Smith's testimony concerning HWK's insurance coverage to the fact that HWK had malpractice insurance and not allowing testimony regarding the one-million-dollar policy limit of that coverage. Although it is unclear in their appellate brief, the Smiths' seem to argue that, based on the general concept of "wholeness", the jury should have been allowed to hear testimony regarding the entirety of the information discussed at the November 2010 meeting to provide context to the jury. Appellants' Br. p. 27-28. To support this claim the Smiths' cite to Federal Rule of Evidence 106 which provides that "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." We assume that the Smiths' intended to cite to the analogous and identical Indiana Evidence Rule 406. Nevertheless, this rule is inapplicable because neither side introduced written or recorded statements regarding the November meeting. The Smiths cite no other cases or statutes to support their argument.

[17] The trial court permitted Smith to testify, for impeachment purposes, that Knepp averred that HWK had malpractice insurance coverage. However, the trial court did not permit Smith to testify regarding the policy limits of that coverage, finding that the relevance of the testimony on the amount of

malpractice coverage was outweighed by the danger of unfair prejudice pursuant to Indiana Evidence Rule 403.

[18] Rule 403 provides that "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ind. Evid. Rule 401.

[19] The only relevance of Smith's testimony was to impeach Knepp's assertion that the parties did not discuss "financial responsibility" beyond Knepp's offer to reimburse the Smiths. Tr. p. 646. Accordingly, the trial court permitted Smith to testify that the parties discussed HWK's malpractice insurance, thereby impeaching Knepp's statement. The trial court did not abuse its discretion in declining to permit Smith to testify about policy limits discussed because (1) that information was cumulative in the sense that its only minimal relevance was to call into question Knepp's already impeached statement, (2) it provided no standalone relevance, and (3) revealing information regarding a defendant's insurance coverage carries an inherent risk of unfair prejudice. *See generally* Indiana Evidence Rule 411; *see also State Farm Mut. Auto. Ins. Co. v. Earl*, 33 N.E.3d 337, 342 (Ind. 2015) ("[W]e are sympathetic to litigants concerns that a jury may improperly rely on that coverage limit as a frame of reference."). The

trial court did not abuse its discretion in excluding the testimony pursuant to Indiana Evidence Rule 403.

# III. Jury Award

This court applies a strict standard when reviewing a jury verdict containing a damage award claimed to be excessive or inadequate. *Dee v. Becker*, 636 N.E.2d 176, 177 (Ind. Ct. App. 1994). On appeal, we will consider only the evidence that supports the award together with the reasonable inferences therefrom. If there is any evidence to support the amount of the award, even if it is conflicting, this court will not reverse.

Traditionally, the jury has been afforded a great deal of discretion in assessing damage awards. *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453 (Ind. 2001); *Dollar Inn v. Slone*, 695 N.E.2d 185, 190 (Ind. Ct. App. 1998), *trans. denied*.

*Ritter v. Stanton*, 745 N.E.2d 828, 843 (Ind. Ct. App. 2001). The verdict will be upheld if the award falls within the bounds of the evidence. *Id.* at 845. In conducting our review, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Harbour v. Bob Anderson Pontiac*, 624 N.E.2d 475, 478 (Ind. Ct. App. 1993).

The Smiths argue that the jury should have awarded expectation damages for the fair market value of the properties. The jury heard evidence of estimations of the value of the properties in question and was free to award expectation damages based thereon. However, the jury also heard evidence questioning the reliability of the property appraisals as well as evidence indicating that the Smiths could have mitigated their damages by purchasing comparable

properties. The Smiths argument essentially amounts to an invitation for this court to reweigh the evidence and reach a different conclusion than the jury, which we will not do. *Id*. Because there was evidence to support the jury's decision not to award expectation damages, we will not disturb that decision.

[22] Ultimately, the jury awarded the Smiths $26,098.26 in damages. Including administrative costs, the Smiths paid a total of $17,298.03 for the tax liens and estimated that the time they devoted to researching and acquiring the properties was worth an additional $4,912.00. The Smiths also claimed that they were entitled to interest on their investment.[4] The jury award is certainly within the bounds of the evidence and greater than the costs incurred by the Smiths, i.e. the Smiths were made whole by the award. Accordingly, we find that the jury award was not inadequate.

[23] The judgment of the trial court is affirmed.

May, J., and Crone, J., concur.

---

[4] The jury heard evidence that if a property owner redeems his or her property between six and twelve months following a tax sale, the investor who purchased the tax lien on the property is entitled to receive fifteen percent interest on the amount paid for the lien, assuming proper notice was given.