## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 16 2019, 5:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David Wemhoff
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Harold E. Chastain,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | October 16, 2019<br><br>Court of Appeals Case No.<br>18A-PC-2799<br><br>Appeal from the Elkhart Superior Court<br><br>The Honorable Stephen R. Bowers, Judge<br><br>Trial Court Cause No.<br>20D02-1801-PC-3 |

**Mathias, Judge.**

[1] Following his convictions for Class C felony intimidation with a deadly weapon and Class B misdemeanor battery, Harold E. Chastain ("Chastain") filed a

petition for post-conviction relief in Elkhart Superior Court. The post-conviction court denied Chastain's petition. Chastain appeals and presents two issues, which we restate as: (1) whether the post-conviction court clearly erred in determining that Chastain was not denied the effective assistance of trial counsel; and (2) whether the post-conviction court clearly erred in rejecting Chastain's claim that he did not knowingly and intelligently waive his right to testify on his own behalf.

We affirm.

## Facts and Procedural History

The facts underlying Chastain's convictions were set forth by this court on direct appeal as follows:

> [O]n the evening of March 8, 2013, Justin Beegle was waiting for a table with his family at the Between the Buns restaurant in Elkhart. Beegle heard Chastain loudly arguing with a woman, Tracy Wilmore, in the parking lot, and, after he saw Chastain shove her, Beegle decided to intervene. He began walking toward Chastain and Wilmore. Chastain noticed Beegle walking toward him and said, "do you have a f***ing problem?" Tr. p. 237. Beegle stopped walking when he was about ten to fifteen feet from Chastain and had some argumentative words with Chastain. Chastain started walking toward Beegle, who told Chastain, "you don't want to do that . . . ." *Id.* at 238. Chastain then turned around, went to his truck, retrieved a handgun, cocked and pointed it at Beegle, and then said "I'll f***ing kill you" several times. *Id.* Beegle responded by telling Chastain he was a "f***ing p***y." *Id.* at 265. The encounter ended shortly thereafter when Chastain got in his truck and drove away.

*Chastain v. State*, 58 N.E.3d 235, 236–37 (Ind. Ct. App. 2016), *trans. denied*. As a result of this encounter, the State charged Chastain with Class C felony intimidation, Class D felony pointing a firearm, and Class B misdemeanor battery. *Id*. at 237.

[4] At Chastain's jury trial, two neutral eyewitnesses testified that they heard Chastain threaten his girlfriend Wilmore; specifically, they heard him yell "shut your f**king mouth," and "I'm going to f**king kill you." Trial Tr. Vol. 1, pp. 44, 46, 116. These witnesses also testified that when Beegle approached Chastain and Wilmore, Chastain stated to Beegle, "do you want a piece of this[?]" and "I'll shoot you." *Id*. at 49, 120. When Beegle responded by telling Chastain, "you don't want to do that," Chastain retrieved a handgun from his truck, cocked it, and pointed it at Beegle, who testified that Chastain repeatedly told him, "I'll f**king kill you." *Id*. at 238.

[5] Chastain's girlfriend testified that, when Beegle approached them, she told him to leave. She further testified that before he retrieved his handgun, Chastain told her that Beegle had a knife. She also testified that Chastain removed the ammunition magazine from his handgun before pointing it at Beegle. Another of Chastain's friends, who was present that night, testified that he did not see a knife and that Chastain did not tell him that Beegle had a knife the night of the incident. However, this friend explained that he "heard about a knife later on." Trial Tr. Vol. 2. p. 341. Beegle admitted that he carried a knife clipped on his belt but denied brandishing or even touching the knife on the night in question.

Neither of the two neutral witnesses saw a knife or heard anyone mention a knife during the confrontation between Chastain and Beegle.

[6] Chastain's trial counsel called as witnesses Beegle's ex-girlfriend, who was dating Beegle at the time of the incident, and the ex-girlfriend's father. Both of these witnesses testified, for purposes of impeaching Beegle's testimony, that he later told them he pulled his knife on Chastain and that Chastain pulled a gun on him in response. Trial Tr. Vol. 2, pp. 352, 363. The trial court instructed the jury to consider these statements only for purposes of impeaching Beegle's testimony that he did not brandish the knife.

[7] Toward the end of the trial, Chastain's counsel requested a break to allow Chastain "an opportunity to make a final call" regarding whether he would testify on his own behalf. Trial Tr. Vol. 2, p. 453. The court recessed and resumed its proceedings forty-two minutes later. Chastain did not testify.

[8] In his closing statement, Chastain's trial counsel argued that Chastain acted in self-defense after Beegle brandished his knife. He argued that the neutral eyewitnesses were too far away to see the knife and noted that Chastain told others that Beegle had a knife. He also mentioned that the testimony of Beegle's ex-girlfriend and her father indicated that Beegle later admitted to them that he did pull his knife that night.

[9] The jury found Chastain guilty as charged, but the trial court vacated the pointing a firearm conviction at sentencing. Trial Tr. Vol. 3, p. 595. On the Class C felony conviction, the court sentenced Chastain to six years, suspended

to probation; on the Class B misdemeanor conviction, the trial court sentenced Chastain to 180 days, suspended to probation.

[10] On direct appeal, Chastain argued that the State had presented insufficient evidence to convict him of Class C felony intimidation. After analyzing several cases interpreting the intimidation statute, we concluded:

> [A]s held by this court in *Roar* [*v. State*, 52 N.E.3d 940 (Ind. Ct. App. 2016)], and as adopted by our supreme court,[1] a conviction under the intimidation statute should not depend upon a precise parsing of the threatening language used by a defendant or a detailed timeline of when a threat was issued in relation to a prior lawful act. Here, it is clear that Beegle engaged in a prior lawful act, and there was a clear nexus between that act and Chastain's threat to kill Beegle while pointing a gun at him. Thus, there is sufficient evidence to support the jury's finding that Chastain committed the crime of intimidation while drawing or using a deadly weapon.

*Chastain*, 58 N.E.3d at 241.

[11] On January 17, 2018, Chastain filed a petition for post-conviction relief, alleging ineffective assistance of trial counsel and prosecutorial misconduct with regard to discovery. The post-conviction court held an evidentiary hearing on Chastain's petition on August 23, 2018. At the hearing, Chastain and his trial counsel testified. Chastain testified that his trial counsel informed him of his

---

[1] Our supreme court granted transfer in *Roar* and "adopt[ed] and incorporate[ed] that portion of the Court of Appeals' opinion addressing the sufficiency of the evidence in accordance with Indiana Appellate Rule 58(A)(1)[.]" *Roar v. State*, 54 N.E.3d 1001, 1002 (Ind. 2016). Our supreme court summarily affirmed the remaining portion of our opinion. *Id.* (citing App. R. 58(A)(2)).

right to testify but claimed that his counsel had not prepared him to testify. Chastain also testified that, during trial, he could not decide whether he should testify but that he now wished he had testified:

> After – after the fact and understanding a lot more of how it all works through the court systems, how the actual proceedings take place, I wish I would have seen a few live trials in real life to see how it actually works. Uh, the preparedness of witnesses and the fact that the evidence was not completely given to the jury or the court to – after the fact, it was very clear to me that nobody testified to [Beegle] having the knife during the trial. It's a huge part of the trial.

Post-Conviction Tr. p. 27. On October 29, 2018, the post-conviction court entered findings of fact and conclusions of law denying Chastain's petition. Chastain now appeals.

## Post-Conviction Standard of Review

[12] Our standard of review for claims that a post-conviction court erred in denying relief is well settled. The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Willoughby v. State*, 792 N.E.2d 560, 562 (Ind. Ct. App. 2003), *trans. denied*. When a petitioner appeals the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On appeal, we do not reweigh evidence nor judge the credibility of witnesses; therefore, to prevail, Chastain must show that the evidence in its entirety leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction

court. *Id.* Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we do not defer to the court's legal conclusions, but the "findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008).

## I. Ineffective Assistance of Trial Counsel

[13] Chastain contends that his trial counsel was ineffective for a variety of reasons. "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Kubsch v. State*, 934 N.E.2d 1138, 1147 (Ind. 2010). A claim of ineffective assistance of trial counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Kubsch*, 934 N.E.2d at 1147. Failure to satisfy either of the two elements will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). When it is easier to dispose of an ineffectiveness claim on the lack of prejudice, then this is the course we should follow. *Trujillo v. State*, 962 N.E.2d 110, 114 (Ind. Ct. App. 2011). Moreover, "[i]solated mistakes, poor strategy, or bad tactics do not necessarily amount to ineffective assistance of counsel." *Herrera v. State*, 679 N.E.2d 1322, 1326 (Ind. 1997) (citations omitted).

[14] Here, Chastain contends that his trial counsel was constitutionally ineffective because he failed to call Chastain as a witness. As a result of this failure, Chastain contends that the only substantive evidence that Beegle drew a knife was not presented to a jury, thereby hamstringing his claim of self-defense.

[15] It has long been the law in Indiana that "[t]he determination of whether a defendant should testify is a matter of trial strategy." *White v. State*, 25 N.E.3d 107, 134 (Ind. Ct. App. 2014) (citing *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998)), *trans. denied*. It has also been held, however, that the right to testify is personal to the defendant and may not be waived by counsel as a matter of trial strategy. *Moore v. State*, 655 N.E.2d 1251, 1254 (Ind. Ct. App. 1995) (citing *United States v. Curtis*, 742 F.2d 1070, 1075 (7th Cir. 1984)). We take this to mean that, if a defendant wishes to testify, trial counsel cannot prevent him from doing so as a matter of trial strategy. And the corollary of this rule is that trial counsel also cannot force a client to testify if he does not wish to do so. Ultimately, the question of whether to testify belongs to the defendant.

[16] Here, there is no evidence to suggest that Chastain's counsel prevented him from testifying. Chastain admitted that his trial counsel informed him of his right to testify. *See* Post-Conviction Tr. p. 22 (in response to question "Did [trial counsel] explain anything about testifying?" Chastain responded, "He said I had the right to testify."). Moreover, the trial transcript shows that trial counsel received an extended recess to discuss with Chastain his decision of whether to testify. *See* Trial Tr. Vol. 2, p. 453 (trial counsel requests a recess to allow Chastain "an opportunity to make a final call" regarding whether he would

testify on his own behalf). When the trial resumed, Chastain did not testify. From this, it can reasonably be inferred that Chastain chose not to testify. Indeed, at the post-conviction hearing, he frankly admitted that he was unsure of whether to testify during his trial but, in hindsight, wished he had. This supports the post-conviction court's determination that Chastain's trial counsel was not ineffective. He clearly gave Chastain the choice of whether to testify, and Chastain chose not to do so. Chastain's after-the-fact regret does not mean that his trial counsel was ineffective.

[17] Still, Chastain argues that his testimony would have been the only substantive evidence regarding whether Beegle brandished his knife and that his trial counsel should have prepared him to testify and called him as a witness to establish this fact.[2] He notes that, although Beegle's ex-girlfriend and her father testified that Beegle told them that he pulled his knife on Chastain, the trial court admitted this evidence only for impeachment purposes. While this is true, it ignores the fact that Chastain's girlfriend testified that, before Chastain retrieved his handgun, he told her that Beegle had a knife. Another of Chastain's friends testified that he heard about the knife "later on." Trial Tr. Vol. 2. p. 341. And Beegle admitted that he was carrying a knife but denied ever pulling it out during his confrontation with Chastain. Thus, assuming that the

---

[2] In support of his argument that he was not adequately prepared to testify, Chastain cites *Tison v. State*, No. 82A01-0904-PC-179, 2009 WL 3161404 (Ind. Ct. App. Oct. 2, 2009), *trans. denied*, which is an unpublished memorandum decision. We remind appellant's counsel that, pursuant to Indiana Appellate Rule 65(D), a memorandum decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or law of the case.

jury obeyed the trial court's instructions to consider the testimony of Beegle's ex-girlfriend and her father for impeachment purposes only,[3] the jury also heard other substantive evidence that Beegle had a knife.

[18] Furthermore, even if Chastain's counsel did advise him not to take the stand, such advice was not unreasonable given Chastain's criminal history. At the time of trial, Chastain had a prior conviction for Class A misdemeanor conversion (he was originally charged with Class D felony theft) and two prior convictions for Class A misdemeanor battery. Accordingly, had he testified on his own behalf, Chastain would have been subject to impeachment based on his conviction for conversion. *See* Ind. Evidence Rule 609(a) (providing that evidence of a witness's prior conviction for a crime of dishonesty is admissible to impeach the witness); *Johnson v. State*, 671 N.E.2d 1203, 1206 n.3 (Ind. Ct. App. 1996) (holding that defendant's prior conviction for criminal conversion was admissible for impeachment purposes under Evidence Rule 609(a)), *trans. denied*; *Winegar v. State*, 455 N.E.2d 398, 401 (Ind. Ct. App. 1983) (holding that conversion, as a lesser included offense of theft, is a crime of dishonesty, and thus, a conviction for conversion may be admissible for impeachment purposes).

[19] Additionally, had he testified, Chastain's prior convictions for battery may have been admissible to rebut his claim of self-defense, thereby weakening his case.

---

[3] *See Hernandez v. State,* 785 N.E.2d 294, 303 (Ind. Ct. App. 2003) (noting that we will presume that the jury will follow the court's admonitions to consider evidence for a particular purpose), *trans. denied*.

*See Poindexter v. State*, 664 N.E.2d 398, 400–01 (Ind. Ct. App. 1996) (holding that trial court did not err in admitting, under intent exception to Evidence Rule 404(b), evidence of defendant's prior batteries to rebut her claim of self-defense).

[20] For similar reasons, we cannot say that Chastain established that he was prejudiced by his failure to testify. The jury heard evidence that Beegle had a knife during the encounter. Had Chastain testified, his own self-serving testimony would likely have been impeached by his prior convictions. His testimony would not have been corroborated by the neutral eyewitnesses who did not see Beegle in possession of a knife. Thus, Chastain has not established that, had he testified, the outcome of the trial would have been any different.

[21] In short, the post-conviction court did not clearly err in determining that Chastain was not denied the effective assistance of counsel based on his trial counsel's failure to call Chastain as a witness.[4]

## II.   *Waiver of the Right to Testify*

[22] Chastain also argues that the post-conviction court failed to address his claim that there was no proof that he knowingly and intelligently waived his right to testify on his own behalf. In addressing this argument, we first note that Chastain did not present any claim regarding the knowing and intelligent

---

[4] We also reject Chastain's argument that his trial counsel was ineffective for failing to prepare him to testify. Chastain fails to explain what advantage such preparation would have provided, especially in light of his prior convictions that would have impeached his testimony. And given that Chastain did not testify, we cannot fault trial counsel for failing to prepare for something that did not happen.

waiver of his right to testify in his post-conviction petition. *See* Appellant's App. pp. 11–13.[5] The failure to present an argument in the petition waives the right to raise the argument on appeal. *Koons v. State*, 771 N.E.2d 685, 691 (Ind. Ct. App. 2002), *trans. denied*. Chastain did not present a claim that he did not knowingly or intentionally waive his right to testify until the conclusion of the post-conviction hearing, *see* Post-Conviction Tr. p. 81, and in his post-hearing memorandum. *See* Appellant's App. pp. 42–45, 53. We therefore conclude that Chastain has waived any argument regarding his waiver of his right to testify.

[23] Furthermore, Chastain frames his argument as whether the post-conviction court "failed to address the issue of whether Mr. Chastain's waiver of his Constitutionally protected right to testify on his own behalf was done knowingly, voluntarily and intelligently." Appellant's Br. at 27. This appears to be a free-standing claim of error, which is generally unavailable in post-conviction proceedings. *Timberlake v. State*, 753 N.E.2d 591, 597–98 (Ind. 2001). That is, if an issue was known and available, but not raised on direct appeal, it is waived; if it was raised on direct appeal, but decided adversely, it is res judicata. *Lee v. State*, 91 N.E.3d 978, 983 (Ind. Ct. App. 2017), *trans. denied* (citing *Timberlake*, 753 N.E.2d at 597–98). Even allegations of fundamental

---

[5] The grounds for relief listed in Chastain's petition were: (1) ineffective assistance of trial counsel by failing to call Chastain as a witness; (2) ineffective assistance of trial counsel for failing to adequately consult Chastain regarding him testifying; (3) ineffective assistance of trial counsel for failing to properly question witness Tracy Wilmore and failing to call as a witness Matt Wilmore; (4) ineffective assistance of trial counsel for failing to properly question witness Elizabeth Beegle; (5) ineffective assistance of trial counsel for failing to properly question witness Destinee Jenkins; (6) the policies of the prosecuting attorney's office violated Chastain's due process rights; and (7) ineffective assistance of trial counsel for failing to sign a discovery agreement with the prosecutor's office.

error are improper as free-standing claims of error in post-conviction proceedings. *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). "In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Id*.

[24] Here, there is no indication that Chastain's argument that he did not knowingly or intelligently waive his right to testify was unknown or unavailable to him on direct appeal. Therefore, it cannot be presented as a free-standing claim of error in his petition for post-conviction relief.

[25] However, Chastain also appears to couch his argument regarding the waiver of his right to testify in terms of the ineffective assistance of trial counsel. *See* Appellant's Br. at 30 (discussing prejudice prong of *Strickland* test). Out of an abundance of caution, and our preference to decide issues on the merits, we address Chastain's argument in the context of a claim of ineffective assistance of trial counsel.

[26] As we explained in *Vanzandt v. State*, 730 N.E.2d 721, 723 (Ind. Ct. App. 2000):

> The right to testify on one's own behalf in a criminal proceeding has been described by the United States Supreme Court as "a right implicit in the Constitution." *United States v. Dunnigan*, 507 U.S. 87, 96 (1993). *See also Baxter v. State*, 522 N.E.2d 362, 368 (Ind. 1988) ("In light of all of these cases, we accept Baxter's claim that his right to testify is constitutionally based."). However, a trial court judge has no affirmative duty to insure

that a defendant represented by counsel knowingly and intelligently waived his right to testify at trial. *Correll v. State*, 639 N.E.2d 677, 681-82 (Ind. Ct. App. 1994). A trial court is entitled to presume that a lawyer and his client have discussed the possibility of testifying. *Phillips v. State*, 673 N.E.2d 1200, 1202 (Ind. 1996).

[27] Chastain argues that he did not knowingly and intelligently waive his right to testify because his trial counsel did not adequately consult with him or prepare him to testify. This argument is belied by the evidence in the record. First, Chastain admitted that his trial counsel informed him that he had a right to testify. He also testified that he and his trial counsel discussed the possibility of his testifying on his own behalf. The trial transcript also shows that Chastain's trial counsel was granted an extended recess to discuss with Chastain whether he would testify, and when the trial resumed, Chastain did not testify. From this, the post-conviction court could reasonably conclude that Chastain knowingly and intelligently waived his right to testify. The post-conviction court was under no obligation to credit Chastain's self-serving testimony to the contrary. Accordingly, the post-conviction court did not err by failing to conclude that Chastain did not knowingly and intelligently waive his right to testify.

## Conclusion

[28] The post-conviction court did not clearly err in concluding that Chastain failed to meet his burden of proving that he was denied the ineffective assistance of trial counsel or that he did not knowingly waive his right to testify.

[29]     Affirmed.

May, J., and Brown, J., concur.