**Richard Louis BUBB,**
**Appellant-Defendant,**

v.

**STATE of Indiana, Appellee-Plaintiff.**

**No. 3–1080A334.**

Court of Appeals of Indiana,
Fourth District.

April 22, 1982.

Harriette Bailey Conn, Public Defender, M. E. Tuke, Deputy Public Defender, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Richard L. Bubb was charged in Kosciusko Superior Court with Dealing in a Sched-

ule I Controlled Substance, Lysergic Acid Diethylamide (LSD) in violation of Ind.Code 35–48–4–2(1).[1]  After trial before a jury, a verdict of guilty was returned and Bubb was sentenced to ten years in jail and fined $100.  Bubb appeals that conviction.

We affirm.

### ISSUES

1.  Was the evidence sufficient to sustain the verdict of the trial court?

2.  Did the failure of the State to inform the jury of discussions held with a defense witness about a possible grant of immunity constitute reversible error?

3.  Does the trial court have a duty under either the sixth or fourteenth amendment to immunize defense witnesses?

4.  Was the admission of a photograph of the defendant so prejudicial as to constitute reversible error?

### DISCUSSION AND DECISION

The facts most favorable to the verdict show that on July 26, 1979, Officer Pershing, an undercover police officer for the Indiana State Police, and a paid informant contacted Ron Hobbs for the purpose of purchasing Lysergic Acid Diethylamide (LSD).  Hobbs stated that he had no drugs but would place a telephone call to see if a seller could be located.

When Hobbs finished the call he informed Pershing and the informant that a seller would be coming but Hobbs would have to deal with him personally.  Pershing, the informant and Hobbs waited at a predetermined location for the seller to arrive.  A car, driven by appellant Bubb, soon entered the parking lot and parked twenty to thirty feet away.

Hobbs got out of Pershing's car and approached Bubb's car.  Pershing testified that at all times Hobbs's hands were in view and he could see into Bubb's car.

1.  Ind.Code 35–48–4–2  "A person who: (1) knowingly or intentionally manufactures or delivers a controlled substance, pure or adulterated, classified in schedule I, II or III, except  marijuana or hashish; . . . commits dealing in a schedule I, II, or III controlled substance, a Class B felony."

When Hobbs reached Bubb's car he rested his arms on the door with his hands inside the car and out of sight. Hobbs and Bubb talked briefly then Pershing saw some "movement" inside the car. Hobbs then returned to the car holding a plastic bag in his hand. Hobbs was never observed reaching into his pockets. Pershing paid Hobbs the agreed price for 102 tablets of LSD. Bubb was later arrested and charged with delivery of a controlled substance.

## I. SUFFICIENCY OF THE EVIDENCE

Bubb challenges evidential sufficiency in two respects: first, that the evidence did not show beyond a reasonable doubt the necessary mental state for delivery of a controlled substance, second, that proof was lacking on the element of delivery. Bubb limits his argument to the element of delivery, acknowledging that if the evidence was sufficient to prove delivery it would also be sufficient to show intent.

When a conviction is reviewed for sufficiency of the evidence we do not weigh the evidence or judge the credibility of witnesses. We look only at the evidence most favorable to the verdict with all reasonable inferences. If there is evidence of probative value on each element of the crime, the decision of the trial court must be affirmed. *Smith v. State*, (1982) Ind., 429 N.E.2d 956.

■ Since no one actually viewed the exchange of the LSD between Bubb and Hobbs, Bubb argues that proof is lacking to show delivery of the controlled substance. We do not agree. A crime may be proven by circumstantial evidence and reasonable inferences drawn therefrom. *Collins v. State*, (1977) 266 Ind. 430, 364 N.E.2d 750. The State presented ample circumstantial proof to support a finding of delivery.

Hobbs was under constant observation and he was never seen reaching into his clothing. Hobbs's hands were only out of sight when they extended into Bubb's car. While Hobbs had his hands inside the car there was movement. Hobbs then returned to Officer Pershing's vehicle carrying a plastic bag containing 102 tablets of LSD. These facts tend to show Hobbs first re-

ceived the LSD while standing at the window of Bubb's car. If that was true, the only person who could have transferred the drugs to Hobbs was Bubb. This conclusion is buttressed by Bubb's polygraph examination which indicated Bubb's exculpatory responses to incriminating questions were deceptive. The evidence presented further confirms statements made by Hobbs that he had to procure the LSD from someone else. The evidence was therefore sufficient to support the jury verdict.

## WITNESS IMMUNITY

■ Bubb contends the prosecutor erred when he failed to inform the court of negotiations held with Hobbs about immunity from prosecution. There is a duty incumbent upon the State to disclose the existence of "deals" made with witnesses. *Giglio v. U. S.*, (1972) 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104; *Newman v. State*, (1975) 263 Ind. 569, 334 N.E.2d 684. However, this duty arises when a confirmed promise exists. Preliminary discussions are not matters which are subject to mandatory disclosure. This is illustrated by *Campbell v. State*, (1980) Ind., 409 N.E.2d 568. In *Campbell*, the defendant was convicted when another participant in the crime gave inculpatory testimony against Campbell. Two weeks after trial the witness was permitted to plead guilty to a lesser offense.

The Supreme Court refused to reverse the conviction on grounds the State had breached its duty to disclose all promises, grants of immunity or rewards offered in exchange for testimony. The Supreme Court distinguished this situation from the earlier *Newman* case because no evidence was presented to show a pre-existing agreement between the prosecutor and the witness. *Id.* at 570. The rule of *Newman* does not contemplate mandatory disclosure of discussions with a witness not resulting in a "deal" or binding promise.

■ Hobbs is within that class of witnesses governed by *Newman and Campbell*. Although he had discussed immunity with the prosecutor no "deal" was ever consum-

mated. Thus, it was not error to refuse to disclose those discussions.

## DEFENSE WITNESS IMMUNITY

As a companion argument to mandatory disclosure, Bubb maintains the State should have granted Hobbs immunity as a defense witness pursuant to the sixth or fourteenth amendment. This issue is premised on the introduction of a letter written by Hobbs to Bubb after the trial allegedly showing that Hobbs was intimidated by the prosecutor not to give testimony that would exculpate Bubb.

■ Since the letter was written after trial, Bubb must show this newly discovered evidence meets the criteria of Ind.Rules of Procedure, Trial Rule 59(A)(6).[2] To gain a new trial on the basis of newly discovered evidence the appellant must show the evidence

"could not, with reasonable diligence, have been discovered and produced at trial. The defendant must establish that such evidence is material and relevant, not merely cumulative, not merely impeaching, that it is not privileged or incompetent, that due diligence was used to discover it in time for trial, that it is worthy of credit and that it raises a strong presumption that it will probably produce a different result upon retrial." (Citations omitted.)

*Schwartz v. State*, (1978) Ind.App., 379 N.E.2d 480, 485–86.

■ Granting a new trial on the basis of newly discovered evidence is a matter within the sound discretion of the trial court. This Court will reverse only if there has been an abuse of that discretion by the trial court. *Smith v. State*, (1982) Ind., 429 N.E.2d 956.

Our review leads us to conclude the letter from Hobbs did not meet the necessary requirements to qualify as newly discovered evidence. Specifically, the Hobbs letter does not make a different trial result more likely.

Testimonial immunity was unknown at the common law. The paramount interest of the State in presenting all relevant testimony entitled it to compel not only attendance but also the testimony of every man. VIII Wigmore, *Wigmore on Evidence* § 2190 et seq. (3d Ed. 1940). However, the advent of constitutional prohibition against compelled testimonial incrimination abrogated the common law rule. As a result, various forms of immunity were developed to force reluctant witnesses to give incriminating testimony.

■ Indiana, like many states, has enacted legislation giving prosecutors the authority to grant use immunity to witnesses and obviate the self-incrimination privilege of the fifth amendment.[3] Exercise of this power is limited to prosecutors. This permits the State, which has the duty of prosecuting criminals, to elicit the testimony of reluctant, but necessary witnesses. *Walters*

2. T.R. 59(A) reads in part as follows:
"(A) Motion to Correct Error—Bases for. The bases for a motion to correct error are established, without limitation as follows: . . .
(6) Newly discovered material evidence which could not, with reasonable diligence have been discovered and produced at trial; . . ."

3. Ind.Code "35–6–3–1 **Self-incrimination; immunity**
Sec. 1. Any witness, in any criminal proceeding, before a court or grand jury, who refuses to answer any question and/or produce any evidence of any kind on the ground that he may be incriminated thereby, *may be ordered by the court to answer any question and/or produce any evidence upon a written request by the prosecuting attorney.* Provid-

ed, That the witness shall be provided with timely notice and a separate hearing on the merits of the order. Unless the court finds that the issuance of the order would be clearly contrary to public interest, the witness shall comply with the order of the court. If, but for this section the witness would have been privileged to withhold the answer given or the evidence produced, he shall not be prosecuted or subjected to penalty or forfeiture for or on account of any answer given or evidence produced: Provided, further, That such immunity shall not be allowed in the case of any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order of the court." (Emphasis added.)

*v. State*, (1979) Ind., 394 N.E.2d 154, 157. It is clearly no violation of the fourteenth amendment equal protection clause to refuse immunity to defense witnesses. *Id.*

Bubb argues the defendant should be able to compel immunity for its witnesses under either fourteenth amendment due process or sixth amendment fair trial grounds.

The fourteenth amendment does not require prosecutors to give an "immunity bath" to defense witnesses. *In re Kilgo*, (4th Cir. 1973) 484 F.2d 1215. Although the defendant has no due process right to compel immunization of defense witnesses, the State may not use that power to interfere with the defense's presentation of its case or to prevent its witnesses from testifying. *Webb v. Texas*, (1972) 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330; *Washington v. Texas*, (1967) 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019. The Third Circuit Court of Appeals made the following statement reconciling witness immunity and due process concerns:

> "[T]he evidentiary showing required to justify reversal on that ground must be a substantial one. The defendant must be prepared to show that the government's decisions were made with the deliberate intention of distorting the judicial fact finding process. Where such a showing is made, the court has inherent remedial power to require that the distortion be redressed by requiring a grant of use immunity to defense witnesses as an alternative to dismissal."

*U. S. v. Herman*, (3d Cir. 1978) 589 F.2d 1191, 1204; *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386.

Similar reasoning governs objections based on the deprivation of the sixth amendment right to a fair trial. The sixth amendment compulsory process clause does empower the defendant to compel witnesses to appear in court and divulge non-privileged testimony, but "[i]t does not go so far as to supplant incriminatory privilege with a grant of immunity." *United States v. Turkish*, (2d Cir. 1980) 623 F.2d 769; *cert. denied*, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800. An analysis of the right to a fair trial would yield the same result. The State must only refrain from interference with the defense's presentation of its case. *U. S. v. Morrison*, (3d Cir. 1976) 535 F.2d 223.

For Bubb to prevail at a new trial he would have to show the State had prevented Hobbs from testifying or intimidated him into withholding evidence he would otherwise have given. The letter submitted by Bubb does not do this. In that letter Hobbs tries to explain his reasons for not giving testimony exculpating Bubb. Hobbs says, "Miner (the prosecutor) would have put every charge on me." Obviously that statement contains no demonstrative proof of threat or intimidation by the prosecutor. Other statements in the letter would support the opposite conclusion; i.e., that Hobbs was primarily concerned with his own exposure to prosecution. He says two lawyers told him not to testify at Bubb's trial. Moreover, Hobbs was accompanied to trial by an attorney who repeatedly advised Hobbs not to answer questions. There is nothing to show the prosecutor interfered with Bubb's right to call and question his witnesses. Thus, we can find no colorable violation of Bubb's constitutional rights.

Since Bubb cannot show a new trial would probably result in a different outcome, the case cannot be re-tried on the basis of newly discovered evidence.

During Hobbs' testimony at trial, Bubb requested use immunity for Hobbs from the prosecutor, which was refused. Bubb argues this denied him access to exculpatory information and thus deprived him of his constitutional rights under the sixth and fourteenth amendments. The logic of Bubb's argument is the State has a duty to provide exculpatory material to the defense under *Brady v. Maryland*, (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. If Hobbs had been granted use immunity he would have given exculpatory testimony. Therefore, the prosecutor's refusal to grant use immunity to Hobbs deprived Bubb of exculpatory evidence in contravention of his constitutional rights. We accept neither the minor premise nor the conclusion of that argument.

While it is true the Constitution does require disclosure of exculpatory information, that duty does not extend to blanket disclosures by the prosecutor pursuant to general requests made by the defendant. *United States v. Agurs*, (1976) 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342. When a general request is made "the prosecutor's duty to disclose can be measured only by reference to the question of whether the evidence in his possession is so 'obviously exculpatory' that his failure to turn it over denied the defendant a fair trial." *Richard v. State*, (1978) 269 Ind. 607, 382 N.E.2d 899, 904; *cert. denied*, 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781.

Bubb makes no showing that he was denied access to exculpatory information, only that he could not use it at trial. That distinguishes this case from *Johns v. State*, (1968) 251 Ind. 172, 240 N.E.2d 60, cited by Bubb as authority for his position. In *Johns* the State failed to list all of its witnesses, subjecting the defense to surprise at trial, and forcing them to "maneuver in a factual vacuum." *Johns*, 240 N.E.2d at 64. Bubb faced no unforeseen surprises from Hobbs. Hobbs had been interviewed before trial and his strengths and weaknesses were known to Bubb as well as the substance of his testimony. If we were to require the State to grant immunity in this case it would elevate trial strategy and the "sporting theory of justice" to the level of constitutional rights; a decision rejected by the United States Supreme Court. *Agurs*, 427 U.S. at 109, 96 S.Ct. at 2400. We thus find no error in the State's refusal to immunize Hobbs.

## PHOTOGRAPHS

Bubb argues the admission of a photograph at trial showing him with long hair was prejudicial and constituted reversible error. We cannot address this issue however, as the substance of the objection made at trial to the admission of the photograph was one of relevancy. An appellant may not change or add to the objection made at trial. *Lucas v. State*, (1980) Ind.,

413 N.E.2d 578. Therefore, no issue is presented for review.

The judgment is in all respects affirmed.

MILLER, P. J., and YOUNG, J., concur.