Martin R. MOORE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 89A05–9410–CR–426.

Court of Appeals of Indiana.

Oct. 4, 1995.

David Puterbaugh, Centerville, for Appellant.

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BARTEAU, Judge.

Martin R. Moore appeals his conviction of murder, a Class A felony[1], raising two issues:

1. Whether the trial court's refusal to compel the State to grant use immunity to a defense witness denied Moore due process of law; and

2. Whether Moore received ineffective assistance of counsel because his counsel failed to call Moore to testify.

We affirm.

## FACTS

Viewed most favorably to the State, the evidence at trial showed that Bill Satterfield was stabbed to death in his backyard when he left the house to go to work on the night of July 12, 1993. Satterfield's wife and daughter, Phyllis and Michelle, heard him calling to them after he went out the back door. When they got to the door, they could not see anything in the backyard because it was dark, but they heard Satterfield say that Marty was there with a knife stabbing him and to get the gun. Phyllis and Michelle got the gun but could not fire it because it jammed. Phyllis attempted to call 911 but the phone would not work because the lines had been cut. Phyllis went for help and when police arrived Satterfield was found dead in the backyard. A knife blade and a watch with a silver stretch wrist band were found at the scene.

The defendant, Martin Moore, is the ex-husband of Satterfield's other daughter Marilyn. The police conducted a search for Moore and found him walking through a field, dressed only in a pair of red bikini underwear and with his hair cut in a mohawk style. The police officers believed Moore was under the influence of some type of drug, but no blood tests were conducted to confirm whether he was. The day before, Moore had been wearing a watch with a silver stretch wrist band and had been chopping down corn with a knife. Other facts will be provided as necessary.

## IMMUNITY

Moore wanted to admit into evidence that he was taking a drug known as "T" on the night Satterfield was murdered. His purpose for admitting the evidence was to explain his bizarre behavior of wandering through a field in his underwear and with his hair cut in a mohawk style on the night of the murder or to use the evidence to estab-

---

1. Ind.Code 35–42–1–1(1).

lish an insanity or intoxication defense. In order to have an expert witness testify as to the effect the drug could have had on Moore, the expert needed to know exactly what drug Moore had ingested. Moore knew the drug only as "T", which could have been one of several types of drugs.

Moore requested that the State grant use immunity to his drug supplier so his supplier could testify as to what the drug was. The State refused and Moore petitioned the trial court to compel the State to grant his supplier immunity. The trial court denied the motion, finding that it lacked the authority to compel the State to grant use immunity to a defense witness. Moore argues that he was denied due process of law.

Indiana Code 35–37–3–2 authorizes the State to grant use immunity to witnesses to obviate the self-incrimination privilege of the Fifth Amendment. In *Walters v. State* (1979), 271 Ind. 598, 394 N.E.2d 154, 157, our supreme court held that only the State could grant use immunity and the defendant's inability to do so did not unlawfully deny the defendant equal protection. *See also Arnold v. State* (1984), Ind., 460 N.E.2d 494, 497.

■ In *Bubb v. State* (1982), Ind.App., 434 N.E.2d 120, this court addressed the question whether the State's refusal to grant immunity to a defense witness denied the defendant due process. We stated that the defendant has no due process right to compel immunization of defense witnesses, but that the State could not use its power to interfere with the defense's presentation of its case or to prevent its witnesses from testifying. *Id.* at 124 (citing *Webb v. Texas* (1972), 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330; *Washington v. Texas* (1967), 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019).

> [T]he evidentiary showing required to justify reversal on that ground must be a substantial one. The defendant must be prepared to show that the government's decisions were made with the deliberate intention of distorting the judicial fact finding process. Where such a showing is made, the court has inherent remedial power to require the distortion be redressed by requiring a grant of use immu-

nity to defense witnesses as an alternative to dismissal.

*Bubb,* 434 N.E.2d at 124 (quoting *United States v. Herman* (3rd Cir.1978), 589 F.2d 1191, 1204, *cert. denied,* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386); *see also United States v. Schweihs* (7th Cir.1992), 971 F.2d 1302, *reh'g denied.* Interference with the defendant's case or distortion of the fact finding process may be established by showing

> (a) prosecutorial overreaching, through threats, harassment, or other forms of intimidation, has effectively forced the witness to invoke the Fifth Amendment, or the prosecutor has engaged in discriminatory use of immunity grants to gain a tactical advantage; (b) the witness's testimony is also material, exculpatory, and not cumulative; and (c) the defendant has no other way to obtain the evidence.

*Blissett v. Lefevre* (2nd Cir.1991), 924 F.2d 434, 442, *cert. denied* 502 U.S. 852, 112 S.Ct. 158, 116 L.Ed.2d 123.

■ Moore has not made the required showing. With his motion to compel the grant of use immunity, Moore submitted an affidavit from his attorney. The affidavit represented that the drug supplier, who remained unnamed in the affidavit, could supply a sample of the drug given to Moore and could establish the foundation that it was the same drug because he gave the drug to Moore. However, Moore has not shown that his drug supplier refused to testify because of threats made by the prosecutor. As far as we know from the record, the State never knew the identity of the witness for whom Moore was seeking immunity. In fact, Moore does not even make a showing that the witness would have refused to testify without immunity.

More importantly, Moore has not shown that the testimony of the supplier would have been exculpatory or led to exculpatory evidence. Moore has not shown what the supplier's testimony would have been as to the identity of the drug, nor the next step of what his expert would have testified about the drug identified by the supplier. Immunity was not necessary for the supplier to tell Moore's attorney the identity of the drug.

Immunity was only necessary for the supplier to lay the foundation at trial that he had supplied that same drug to Moore. Without making a showing of the effects the drug might have had on Moore, Moore has not shown that he had a defense that was unavailable only because the State did not grant use immunity to his supplier. The trial court properly denied Moore's motion to compel the State to grant use immunity to a defense witness.

## ASSISTANCE OF COUNSEL

■ Moore argues that he received ineffective assistance of counsel because his counsel did not call Moore to testify. He argues this deprived him of his constitutional right to testify on his own behalf. Our supreme court has stated that counsel's decision to not have the defendant testify is a trial tactic that should not be second guessed on appeal. *Ford v. State* (1988), Ind., 523 N.E.2d 742, 747. In *United States v. Curtis* (7th Cir.1984), 742 F.2d 1070, 1075, *cert. denied* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600, the court stated that it was inappropriate to treat the decision whether to have the defendant testify as a matter of trial strategy because it involved the defendant's constitutional right to testify. The right to testify is personal and may not be waived by counsel as a matter of trial strategy. *Id.* at 1076.

■ It is not enough, however, for the defendant to merely assert after trial that he wanted to testify and his counsel would not let him.

> [T]his barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary— and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood v. Clark* (7th Cir.1991), 939 F.2d 473, 476.

■ Here, we do not even have the barebones assertion from Moore that he desired to testify and his counsel would not let him. He has not submitted an affidavit to that effect; he merely argues in his brief that counsel did not call him to testify and that we may not presume from a silent record that he waived his right to testify. However, the trial court does not have a duty to ensure that a defendant's waiver of the right to testify is voluntary. *United States v. Campione* (7th Cir.1991), 942 F.2d 429, 439 (citing *Underwood,* 939 F.2d at 475). Thus, a silent record does not mandate reversal and Moore has not supported his assertion with evidence that he did not waive his right to testify.

Nor does Moore show how he was prejudiced by not testifying in his own defense. He has not submitted an affidavit showing what his testimony would have been; thus, we have no way of determining the impact his testimony might have had. *See Hunter v. State* (1991), Ind., 578 N.E.2d 353, 355, *reh'g denied.* Under the circumstances, Moore has not shown reversible error.

Moore's conviction of murder is AFFIRMED.

SHARPNACK, C.J., and FRIEDLANDER, J., concur.