## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2020, 10:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

James Carr
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief, Criminal Appeals

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Carr,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

July 31, 2020

Court of Appeals Case No.
18A-PC-2831

Appeal from the Fulton Superior Court

The Honorable Wayne E. Steele, Judge

Trial Court Cause No.
25D01-1305-PC-319

**Bradford, Chief Judge.**

# Case Summary

In 2006, James A. Carr was charged with the murder of Roy Shaffer. Carr was subsequently found guilty and sentenced to a fifty-five-year term of incarceration. We affirmed Carr's conviction on August 9, 2012. In 2013, Carr filed a *pro-se* petition seeking post-conviction relief ("PCR"), arguing that he had not received a fair trial and that he had received ineffective assistance of trial counsel. Following a hearing, the post-conviction court denied Carr's PCR petition. We affirm.

# Facts and Procedural History

Our memorandum decision in Carr's second direct appeal, which was handed down on August 9, 2012, instructs us to the underlying facts and procedural history leading to this post-conviction appeal:

> On November 4, 2006, Carr entered the Denton Corner Tavern in Monterey, Indiana. The bartender, Jan French, was informed by a customer that Carr had blood on his pants. French spoke with Carr, and Carr said that he needed to go home. French did not believe that Carr could safely drive because he was intoxicated. French offered to drive him home and arranged to have Darlene Denton, the tavern owner, follow them in a separate vehicle.
>
> During the drive, Carr informed French that "he was going to jail." Tr. p. 381. She assured him that he need not worry because she was driving. He then told her that he had shot Roy Shaffer. He said that Shaffer "wouldn't tell me the truth, so I pulled the trigger." *Id.* at 382. Carr was allowing Shaffer to stay at Carr's mother's vacant house and was providing support until

Shaffer could become self-sufficient. Carr and Shaffer had spent the night drinking at Shaffer's home. According to Carr, an argument began between the two men, which resulted in the shooting.

After French delivered Carr to his home, she relayed to Denton what Carr had told her. French and Denton returned to the tavern and called the sheriff's department to report the incident. Both women drove to the house in order to provide the sheriff's department with more information. When they arrived at Shaffer's house, the women found Shaffer lying in a wheelbarrow with his legs draped over the side. French was on the phone with the sheriff's department when they discovered Shaffer's body.

Deputy Terry Engstrand of the Fulton County Sheriff's Department responded to the dispatch. Deputy Engstrand found Shaffer in the wheelbarrow, and it was apparent that he had been shot in the face and had a wound on his right cheek. Detective Daniel Pryor arrived a short time later. When Detective Pryor questioned Denton and French, the women confirmed that Carr had admitted to killing Shaffer. Officers searched Carr's house, and he was taken into custody. During the search, Carr said, "I haven't told anyone. Oh wait, I did tell someone." *Id.* at 471.

On November 8, 2006, Carr was charged with murder. A jury trial was conducted in April 2009, and Carr was found guilty of murder. On June 16, 2009, Carr was sentenced to fifty-five years imprisonment. Carr appealed this conviction and raised the issue of an erroneous police interview conducted in disregard of his right to counsel. In a memorandum decision, we affirmed Carr's conviction. The supreme court, however, granted Carr's petition to transfer, and on September 29, 2010, the supreme court reversed our determination and remanded the case for a new trial.

On March 1, 2011, Carr requested a change of venue and moved for a change of judge. On April 8, 2011, the trial court found that

Carr's motion for change of venue was premature and denied his motion for change of judge. On September 6, 2011, Carr filed a petition for writ of mandamus in our supreme court requesting the trial court be ordered to grant his motion for change of judge. The supreme court denied Carr's petition stating that it was not timely filed and that it failed to demonstrate any bias. *See* Appellant App. p. 467.

A second jury trial was conducted in October 2011. At the trial, the State presented evidence from forensic pathologist Dr. Joseph Prahlow who performed the autopsy on Shaffer. Dr. Prahlow concluded that Shaffer suffered a stellate shotgun wound to the face. Shaffer's wound also showed signs of soot on the outside of and deep within the wound. Through his study of the wound, which included an examination of the soot and the charring of the wound, he could not determine if the wound was inflicted from a distance or in contact with Shaffer's face. He did state that it was unlikely to find deep charring in a distant wound and that Shaffer's wound had signs that were more characteristic of a contact wound.

Carr's counsel presented two hypothetical scenarios to Dr. Prahlow during cross-examination. First, counsel asked whether the wound was consistent with a scenario in which a person is holding a shotgun, stumbles, reaches across a table, and discharges a gun. Dr. Prahlow agreed that this is a possible scenario in which the wound could have occurred. Second, Carr's counsel asked if the wound was consistent with a scenario in which one person is holding the shotgun and the victim shoves the person who falls to the floor and pulls the trigger as a result of the fall. Again, Dr. Prahlow agreed. Beyond the presentation of these hypothetical scenarios, Carr provided no evidence to prove the hypothetical scenarios.

At trial, Carr tendered a jury instruction on the lesser included offense of reckless homicide. Carr asserted that there was a serious evidentiary dispute as to Carr's state of mind at the time

of the shooting, which was evidenced by Dr. Prahlow's positive responses to his hypothetical scenarios. The trial court denied this request, finding no serious evidentiary dispute, and instructed the jury only on the charge of murder. The jury found Carr guilty of murder, and he was sentenced to fifty-five years.

*Carr v. State*, 25A04-1112-CR-650 *1–2 (Ind. Ct. App. August 9, 2012) ("*Carr II*"). Carr appealed his murder conviction following his second trial, arguing that the trial court had erred by not granting his motion for a change of judge and by denying his request for an instruction on the lesser-included offense of reckless homicide. *Id.* at *2–3. Concluding that Carr had not demonstrated that the trial court erred in either regard, we affirmed Carr's conviction. *Id.* at *2–3.

[3] On May 20, 2013, Carr filed a *pro se* PCR petition and a motion for a change of judge. The post-conviction court denied Carr's motion for a change of judge on July 19, 2013. Carr subsequently amended his PCR petition on July 9, 2014, and again on March 20, 2017.

[4] On January 26, 2018, Carr filed a motion in which it requested that the post-conviction court "reverse Carr's conviction on summary disposition." Appellant's App. Vol. III p. 110. The State objected to Carr's request for a summary disposition. Finding "that there are material issues of fact that are in dispute and are not appropriately resolved by summary disposition," the post-conviction court denied Carr's motion. Appellant's App. Vol. III p. 133. The post-conviction court conducted an evidentiary hearing on July 24, 2018. On

October 29, 2018, the post-conviction court issued an order denying Carr's PCR petition.

# Discussion and Decision

[5] Carr contends that the post-conviction court erred in denying his PCR petition. Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id.* A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

[6] Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*.

The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).

In challenging the denial of his PCR petition, Carr alleges that the post-conviction court committed certain errors, that the prosecutor committed certain instances of prosecutorial misconduct, and that he suffered ineffective assistance of counsel. The State points out that "Carr raises numerous claims in various–sometimes unclear–legal and procedural postures." Appellee's Br. p. 21. We agree with the State that "[i]t is often unclear whether [Carr] intends to address a claim as a freestanding claim of error or as an allegation of ineffective assistance by one of the many attorneys who represented him through his two trials, two direct appeals, and post-conviction hearing." Appellee's Br. p. 21. Despite the unclear nature of some of Carr's arguments, we will nonetheless address each of his arguments below.

## I. Denial of Motion for Summary Disposition

Carr contends that the post-conviction court abused its discretion by denying his request for summary disposition of his PCR petition. Post-Conviction Rule 1(4)(g) provides that

> [t]he court may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court may ask for oral argument on the legal issue raised. If an issue of material fact is

raised, then the court shall hold an evidentiary hearing as soon as reasonably possible.

[9] Carr requested that the post-conviction court "reverse Carr's conviction on summary disposition." Appellant's App. Vol. III p. 110. The post-conviction court denied Carr's motion for summary disposition, finding "that there are material issues of fact that are in dispute and are not appropriately resolved by summary disposition." Appellant's App. Vol. III p. 133. Carr argues on appeal that the post-conviction court abused its discretion because the court should have unilaterally separated the issues in which he claims there was no genuine issue of material fact and grant partial summary disposition on those claims. Carr presents no authority indicting that the post-conviction court was under an obligation to do so, and we are aware of none. Carr did not request partial summary disposition, but rather full summary disposition. Given the post-conviction court's determination that there were issues of material fact in dispute, we conclude that the post-conviction court did not abuse its discretion in denying Carr's request for summary disposition.

## II. Denial of Motion for Change of Judge

[10] Initially we note that many of the allegations raised against the trial court by Carr occurred prior to his second trial. In the direct appeal from Carr's second trial, Carr argued that the trial court had erred by denying his request for a change of judge. *Carr II*, 25A04-1112-CR-650 *2. We concluded on appeal that Carr had not alleged any specific bias or presented any evidence to suggest any personal prejudice on behalf of the trial court judge. *Id.* at * 2–3. We therefore

concluded that "Carr ha[d] not demonstrated that the trial court erred when it denied his motion for a change of judge." *Id.* at *3. As such, to the extent that Carr's post-conviction argument can be read as a challenge to the trial court's denial of his pre-trial request for a change of judge, such a challenge is barred by the doctrine of *res judicata*. *See Maxey v. State*, 596 N.E.2d 908, 911 (Ind. Ct. App. 1992) ("Issues previously decided adversely to a petitioner's position are *res judicata* and not subject to further examination.").

[11] To the extent that Carr's argument relates to the denial of his post-conviction motion for a change of judge, Carr contends that the post-conviction court's prior orders, entered in the court's position as the trial court, demonstrate bias. Specifically, Carr claims that the post-conviction court's "rulings on this matter remain speculative, subsequently unfounded and prejudicial." Appellant's Br. p. 18. Carr suggests that it is possible that the post-conviction court had "preconceived notions of Carr's criminal guilt and prejudicial personal beliefs as to Carr's character." Appellant's Br. p. 19.

[12] When the impartiality of the judge is challenged on appeal, "we will presume that the judge is unbiased and unprejudiced. *Perry v. State*, 904 N.E.2d 302, 307 (Ind. Ct. App. 2009) (citing *Smith v. State*, 770 N.E.2d 818, 823 (Ind. 2002)).

> To rebut that presumption, the defendant "must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy." [*Smith*, 770 N.E.2d at 823]. "To assess whether the judge has crossed the barrier into impartiality, we examine both the judge's actions and demeanor." *Timberlake v. State*, 690 N.E.2d 243, 256 (Ind. 1997).

*Id.* at 307–08 (Ind. Ct. App. 2009). We have previously concluded that "adverse rulings alone are insufficient to establish bias per se." *Id.* at 308 (citing *Moore v. Liggins*, 685 N.E.2d 57, 63 (Ind. Ct. App. 1997)). "Furthermore, bias will rarely, if ever, be found on the face of rulings alone because the defendant must show an improper or extra-judicial factor or such a high degree of favoritism that a fair judgment was impossible." *Id.* (citing *Crawford v. State*, 634 N.E.2d 86, 87 (Ind. Ct. App. 1994)). Carr has offered no evidence that the post-conviction court derived its decisions from an improper source or was motivated by the type of hostility necessary to establish judicial bias. As such, Carr has failed to establish that the post-conviction court's prior rulings establish bias.

[13] Apart from his argument relating to the court's prior rulings, Carr argues that the post-conviction court was a witness to events which allegedly occurred in the court's chambers prior to his first trial. Carr, however, does not specify what was discussed in the court's chambers or how it was prejudicial to or suggests bias against him. The post-conviction court found that "The Court having reviewed [Carr's] affidavit in support of his motion for change of judge shows no historical facts that demonstrate bias or prejudice on the part of the Judge." Appellee's App. Vol. II p. 23. Based on the record before us, we must agree with the post-conviction court that Carr has failed to establish either bias or prejudice with regard to any events which allegedly occurred in the court's chambers prior to Carr's first trial. The post-conviction court, therefore, did not err in denying Carr's motion for a change of judge.

# III. Search of Kewanna Residence

Carr contends that the post-conviction court abused its discretion in determining that the warrantless search of Shaffer's residence, *i.e.*, the Kewanna residence, was justified. Specifically, he argues that (A) a search warrant was necessary because French and Denton acted as agents of law enforcement when they went to Shaffer's home after Carr admitting to killing Shaffer and (B) the post-conviction court "misinterpreted and/or misapplied the law" regardless warrantless searches. Appellant's Br. p. 24. However, to the extent that Carr raises independent arguments relating to the warrantless search of the Kewanna residence, such claims are not available for post-conviction review as they were known and available at the time of Carr's direct appeal. *See Timberlake v. State*, 753 N.E.2d 591, 598 (Ind. 2001) (providing that an issue that was known and available on direct appeal and is not available as a freestanding claim in postconviction relief); *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993) ("Issues which were or could have been raised on direct appeal are not available for review in post-conviction.").

# IV. "Speedy Trial" Right Violated

At his first trial, Carr filed a motion for discharge, claiming that because he had not been brought to trial within the required one-year period, the murder charge should be dismissed pursuant to Indiana Criminal Rule 4(C). In support of his motion, Carr argued that two continuances, both of which his counsel had agreed should be attributed to Carr, were erroneously attributed to him. The trial court denied Carr's motion and Carr subsequently challenged the denial on

appeal. Holding that the trial court had not erred in denying Carr's motion, the Indiana Supreme Court stated the following:

> The defendant's appellate claim of error in denying his motion for discharge is predicated upon his assertion that these two continuances should not have been charged to the defendant. Rejecting this claim, we find no error in the trial court's decision to charge both delays to the defendant and thus to deny the defendant's motion for discharge under Criminal Rule 4(C).

*Carr v. State*, 934 N.E.2d 1096, 1101 (Ind. 2010) ("*Carr I*"). Thus, to the extent that Carr's arguments in the instant appeal can be read as rehashing this argument, Carr's arguments are barred by the doctrine of *res judicata*. *See Maxey*, 596 N.E.2d at 911 ("Issues previously decided adversely to a petitioner's position are *res judicata* and not subject to further examination."). To the extent that Carr's arguments in the instant appeal can be read as a different challenge than that raised in his first direct appeal, such arguments are not available for post-conviction review as they were known and available at the time of Carr's direct appeal. *See Timberlake*, 753 N.E.2d at 598 (providing that an issue that was known and available on direct appeal and is not available as a freestanding claim in postconviction relief); *Weatherford*, 619 N.E.2d at 917 ("Issues which were or could have been raised on direct appeal are not available for review in post-conviction.").

# V. French's Inconsistent Testimony During the Evidentiary Hearing

[16]     During the evidentiary hearing, French testified, for the first time, that Carr told her on the night of Shaffer's murder that "as far as he knew, the gun didn't work." PCR Tr. Vol. II p. 142. French admitted that she had "never said anything about the gun not working" despite testifying at both of Carr's trials and participating in police interviews. PCR Tr. Vol. II p. 155. Carr asserts on appeal that the post-conviction court erred in denying his PCR petition because French's statements.

[17]     To the extent that he raises a free-standing claim with regard to French's testimony, Carr essentially seems to argue that French's testimony should be treated as newly discovered evidence. We disagree.

> [N]ew evidence will mandate a new trial only when the [petitioner] demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial. *See Fox v. State*, 568 N.E.2d 1006, 1007 (Ind. 1991). This Court analyzes these nine factors with care, as "[t]he basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized." *Reed v. State*, 508 N.E.2d 4, 6 (Ind. 1987).

*Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000). "The burden of showing that all nine requirements are met rests with the petitioner for post-conviction

relief." *Taylor v. State*, 840 N.E.2d 324, 330 (Ind. 2006) (citing *Webster v. State*, 699 N.E.2d 266, 269 (Ind. 1998)). Carr has failed to prove that French's testimony was not merely impeaching. He has therefore failed to carry his burden of proving that French's testimony during the evidentiary hearing was newly discovered evidence that would warrant a new trial.

# VI. Prosecutorial Misconduct

[18] Carr raises numerous claims of alleged prosecutorial misconduct. The vast majority of these claims relate to actions and delays which allegedly occurred prior to or during his two trials. To the extent that Carr's claims relate back to alleged misconduct that occurred prior to and during his two trials, such claims are not available for post-conviction review as they were known and available at the time of Carr's direct appeals. *See Timberlake*, 753 N.E.2d at 598 (providing that an issue that was known and available on direct appeal and is not available as a freestanding claim in postconviction relief); *Weatherford*, 619 N.E.2d at 917 ("Issues which were or could have been raised on direct appeal are not available for review in post-conviction.").

[19] Carr identifies one instance of alleged prosecutorial misconduct during the post-conviction proceedings. Specifically, Carr asserts that the prosecutor committed misconduct by testifying as a witness during the evidentiary hearing. Any potential error or misconduct, however, was invited by Carr as Carr called the prosecutor as a witness and made no effort to have him replaced as prosecutor. "[A] 'party will not be permitted to take advantage of errors which

he himself committed or invited or induced the trial court to commit, or which were the natural consequences of his own neglect or misconduct.'" *Batchelor v. State*, 119 N.E.3d 550, 557 (Ind. 2019) (quoting *Jolly v. Modisett*, 257 Ind. 426, 429, 275 N.E.2d 780, 782 (1971)). Stated differently, a petitioner "may not invite error and then complain on review." *Joyner v. State*, 736 N.E.2d 232, 237 (Ind. 2000). Carr's claims relating to the prosecutor's alleged misconduct are therefore waived.[1]

## VII. Ineffective Assistance of Trial Counsel

The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor*, 840 N.E.2d at 331. "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial

---

[1] Furthermore, to the extent that Carr asserts that the post-conviction court erred by failing to act *sua sponte* to appoint a special prosecutor, Carr's argument on appeal is wholly focused on the alleged misconduct by the prosecutor, apart from the single, undeveloped and unsupported statement that Carr was prejudiced "by the failure of [the post-conviction court] to raise a *sua sponte* issue concerning the validity of the proceedings." Appellant's Br. p. 36. We conclude that Carr's assertion relating to the post-conviction court is waived for failure to make a cogent argument that is supported by relevant authority. *See Martin v. Hunt*, 130 N.E.3d 135, 137 (Ind. Ct. App. 2019) ("Failure to present a cogent argument results in waiver of the issue on appeal."); Ind. Appellate Rule 8(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record of Appeal relied on.").

process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686).

[21] A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

[22] Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. A petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim

may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

## A.  Collective Counsel's Alleged Failure to Investigate whether French and Denton Acted as Agents of the State

Carr argues that collective counsel[2] "either failed to investigate [whether French and Denton acted as agents of the State] in order to challenge [the] State's warrantless search [of the Kewanna property] as being initiated by agents of the government or simply ignored Carr's constitutional protections." Appellant's Br. p. 21. "An attorney 'has a duty to make a reasonable investigation or to make a reasonable decision that the particular investigation is unnecessary.'" *Warren v. State*, 146 N.E.3d 972, 978 (Ind. Ct. App. 2020) (quoting *Ritchie v. State*, 875 N.E.2d 706, 719-720 (Ind. 2007)). Carr has failed to present any evidence or argument supporting his assertion that collective counsel did not investigate any and all potential issues relating to the search of the Kewanna property. In denying Carr's claim of ineffective assistance of counsel, the post-conviction court found "that the Petitioner presented no affirmative evidence to support this claim and the Court can find no evidence in the record that would support any such claim by a preponderance of the evidence." Appellee's Br. p. 11. We agree with the post-conviction court and conclude that Carr has failed

---

[2] Carr was represented by five different attorneys during trial court and prior appellate proceedings. In arguing that he received ineffective assistance of counsel, he refers to them collectively as "collective counsel." Except where Carr alleges ineffective assistance by a particular attorney, we will do the same.

to establish that his collective trial counsel provided ineffective assistance in this regard.

## B. Collective Counsel's Failure to Move to Suppress Evidence

Carr also argues that his collective counsel provided ineffective assistance by failing to move to suppress evidence recovered during the search of the Kewanna property. Specifically, he argues that collective counsel failed "to hold [the] State to its adversarial burden." Appellant's Br. p. 24. Carr also argues that collective counsel's failure "to raise this issue prior to trial and at trial as well as the failure of Appellate Counsel to raise this issue as fundamental error on appeal, collectively fall [sic] below an acceptable standard for Indiana attorneys, and Carr has suffered significant financial loss, public deprecation of character, and legal prejudice due to their ineffectiveness." Appellant's Br. p. 30.

In raising these assertions, Carr argues that because the State failed to justify the warrantless search of the Kewanna property and he had standing to challenge the constitutionality of the search, his collective counsel were ineffective for failing to challenge the admissibility of the evidence prior to or at either trial or to raise the issue in either of his direct appeals. The post-conviction court rejected Carr's claim of ineffective assistance, finding that Carr "has failed to meet his burden of proof that he had standing to object to the warrantless search of the Kewanna residence and the Court finds that the Petitioner did not have

such standing and his attorneys were not ineffective for not filing a motion to suppress." Appellee's App. Vol. II p. 18.

[26] However, regardless of whether Carr had standing to challenge the constitutionality of the search warrant, he has failed to demonstrate prejudice. Carr's identity as the shooter was never in question, as he had admitted to French that he shot Shaffer during an argument. As such, collective counsel appear to have made the strategic decision to attempt to negate the *mens rea* requirement of the crime and to prove that Carr should, at most, be found guilty of a lesser-included offense of murder. Attorney J.A. Rigdon testified at the evidentiary hearing that evidence recovered from the Kewanna residence supported a theory that "this was something possibly done during a struggle over a gun, as opposed to with malice or forethought." PCR Tr. Vol. II p. 122. We agree with the State that "not filing a motion to suppress the evidence was a reasonable trial strategy because the evidence bolstered Carr's theory of the case." Appellee's Br. p. 33. Carr points to no evidence that was recovered during the search of the Kewanna residence that he claims that the jury was likely to have relied on in finding him guilty of murder. Further, we find it much more likely that in finding Carr guilty of murder, the jury relied on his admission to French that he had shot Shaffer together with the gun recovered during the unchallenged search of his home than any unspecified evidence recovered during the search of the Kewanna residence.

## C. Collective Counsel's Alleged Failure to Interview French

[27] Carr argues that is collective counsel's "failure to interview French or make any attempt to corroborate Carr's Initial Interview statements falls below an acceptable standard for Indiana attorneys and represents ineffective assistance of counsel." Appellant's Br. p. 31. Allegations that counsel "failed to investigate issues and interview witnesses do not amount to ineffective assistance absent a showing of what additional information may have been garnered from further consultation or investigation and how that additional information would have aided in the preparation of the case." *Coleman v. State*, 694 N.E.2d 269, 274 (Ind. 1998) (citing *Brown v. State*, 691 N.E.2d 438, 446–47 (Ind. 1998)).

[28] Carr asserts that his collective counsel should have interviewed French in order to obtain her post-conviction testimony that Carr did not believe the gun was in working condition on the night of Shaffer's death. The record reveals that French had been interviewed by police prior to Carr's first trial and had made no indication that Carr had claimed to have believed that the gun did not work. Nothing from the record indicates even the possibility that French would have made statements to counsel that differed from those made to police. Carr does not claim that he ever informed counsel that he had told French that he did not believe the gun worked and there is no evidence to suggest that counsel had any reason to believe that such evidence might exist or pursue such a line of inquiry. French did not make the revelation about Carr's alleged belief until many years after the fact and after she had been interviewed by police and had testified and

been cross-examined during Carr's two trials. In denying Carr's claim, the post-conviction court found that "Petitioner has presented no affirmative evidence to support these claims and the court can find no evidence in the record that would support any such claims by a preponderance of the evidence." Appellee's App. Vol. II p. 12. We agree with the post-conviction court and conclude that Carr has failed to prove either deficient performance or that he was prejudiced by counsels' failure to interview French.

## D. Counsel's Failure to Call Carr to Testify at his Second Trial

Carr also argues that attorney J.A. Rigdon, his counsel during his second trial, provided ineffective assistance by failing to call him as a witness during his second trial. He asserts this deprived him of his constitutional right to testify on his own behalf. "Our supreme court has stated that counsel's decision to not have the defendant testify is a trial tactic that should not be second guessed on appeal." *Moore v. State*, 655 N.E.2d 1251, 1254 (Ind. Ct. App. 1995) (citing *Ford v. State*, 523 N.E.2d 742, 747 (Ind. 1988)). Further, while the right to testify "is personal and cannot be waived by counsel as a matter of trial strategy[,] … [i]t is not enough … for the defendant to merely assert after trial that he wanted to testify and his counsel would not let him." *Moore*, 655 N.E.2d at 1254.

> "[T]his barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly

forbade his client to testify—to give the claim sufficient
credibility to warrant a further investment of judicial resources in
determining the truth of the claim."

*Id.* (quoting *Underwood v. Clark*, 939 F.2d 473, 476 (7 Cir. 1991)).

[30] Carr has failed to prove that Rigdon prevented him from testifying. Instead, the record demonstrates that Rigdon merely advised against it and Carr decided to follow Rigdon's advice. During the evidentiary hearing, Rigdon testified that he and Carr had discussed whether Carr would testify, stating "My recollection of the conversations was that [Carr's] first instinct was that he wanted to talk to the jury. And that my advice to him that he not. That I thought it would be counter-productive. And that he ultimately consented and went along with my advice." PCR Tr. Vol. II p. 121. Rigdon further explained that he believed it would be counter-productive for Carr to testify because it would likely open the door to admission of prior incriminating statements made by Carr during his interview with police which the Indiana Supreme Court had found to be erroneously admitted in *Carr I*, and which were therefore to be excluded from Carr's second trial. (PCR Tr. Vol. II pp. 130–31)

[31] In denying Carr's claim that Rigdon was ineffective in this regard, the post-conviction court found

> Petitioner's counsel at the second trial was his appellate counsel
> following the first trial. Attorney Rigdon was successful in
> reversing the first conviction solely upon the grounds that
> Petitioner's statement to the police should have been suppressed.
> Had counsel have called on him to testify the improperly

obtained statement, which constituted a complete confession to the offense, would have been fully admissible by the State. It is inconceivable to the Court that after having the conviction reversed on this ground that the petition[er] would then testify and thereby open the door to the reintroduction of his confession. The Court finds that counsel would more likely have been incompetent if he had called or advised the Petitioner to testify. The Court finds no evidence to support this claim.

Appellee's App. Vol. II p. 11. We agree with the post-conviction court and conclude that Carr has failed to prove that Rigdon's performance, *i.e.*, his recommendation that Carr not testify, was deficient or fell below an objective standard of reasonableness.

## E.  Counsel's Failure to Proffer a Voluntary Manslaughter Instruction

[32]  Carr argues that Rigdon provided ineffective assistance during his second trial "for not submitting to the Trial Court any further instruction for a lesser included offense of murder, especially after presenting a theory of physical struggle between Decedent and Carr." Appellant's Br. p. 38. "The decision of whether or not to present a defense can be considered a matter of trial strategy and will not be lightly second guessed." *Whitener v. State*, 696 N.E.2d 40, 43 (Ind. 1998).

> It is well-established that trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness. *Garrett v. State*, 602 N.E.2d 139, 142 (Ind. 1992). This is so even when "such choices may be subject to criticism or the choice ultimately prove detrimental to

the defendant." *Id.*

> Further, this Court has previously held that a tactical decision not to tender a lesser included offense does not constitute ineffective assistance of counsel, even where the lesser included offense is inherently included in the greater offense. *Page v. State*, 615 N.E.2d 894, 895 (Ind. 1993). In *Page*, we concluded: "It is not sound policy for this Court to second-guess an attorney through the distortions of hindsight." *Id.* at 896. There is no reason to stray from this policy.

*Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998)

[33]　The record reveals that the trial court refused to tender Carr's proffered voluntary manslaughter instruction during his first trial, finding that "there is not a serious evidentiary dispute over the element or elements that distinguish the crime charged from those lesser included." *Carr I*, 934 N.E.2d at 1111. Carr challenged the trial court's refusal to tender his proffered instruction in his first appeal. The Indiana Supreme Court did not consider Carr's challenge on appeal, stating:

> To support the existence of a serious evidentiary dispute that would warrant the giving of his tendered lesser included offense instructions, the defendant largely relies on evidence from his custodial police interview. Because we have determined that it should have been excluded by the trial court, this issue is not likely to reappear upon retrial and thus does not merit further discussion in this appeal.

*Carr I*, 934 N.E.2d at 1111. One may infer from the Supreme Court's statement that a request for a voluntary-manslaughter instruction would likely be denied

on retrial as there would not likely be evidence in the record to support giving such an instruction.

[34] Rigdon testified during the evidentiary hearing that he and Carr

> had talked about two or three different lesser includeds. The voluntary manslaughter, I think was one that was brought up at the first trial. And we went with reckless homicide because that was something that had not been considered at the first trial. Therefore, I didn't believe I'd have the same difficultly in overcoming the Judge's decision that he made in the first trial, on some the other lesser included charges.

PCR Tr. Vol. II pp. 126–27. Rigdon's testimony demonstrates that he made the strategic decision to try a different approach, rather than reuse one that had been unsuccessful in the first trial. Carr has failed to show that Rigdon's strategic decision was unreasonable. Carr has therefore failed to prove that Rigdon's performance was deficient or fell below an objective standard of reasonableness.

## VIII. Ineffective Assistance of Post-Conviction Counsel

[35] With regards to claims of ineffective assistance of post-conviction counsel, the Indiana Supreme Court has held as follows:

> The right to counsel in post-conviction proceedings is guaranteed by neither the Sixth Amendment of the United States Constitution nor art. 1, § 13 of the Constitution of Indiana. A petition for post-conviction relief is not generally regarded as a criminal proceeding and does not call for a public trial within the meaning of these constitutional provisions. *Carman v. State*

(1935), 208 Ind. 297, 196 N.E. 78.  It thus is not required that the constitutional standards be employed when judging the performance of counsel when prosecuting a post-conviction petition at the trial level or at the appellate level.

We therefore apply a lesser standard responsive more to the due course of law or due process of law principles which are at the heart of the civil post-conviction remedy.  We adopt the standard that if counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court, it is not necessary to judge his performance by the rigorous standard set forth in [*Strickland*].

*Baum v. State*, 533 N.E.2d 1200, 1201 (Ind. 1989).

[36]   Carr was represented by counsel during the evidentiary hearing.  He claims that his post-conviction counsel provided ineffective assistance by failing "to enter a contemporaneous objection to the practice" of the prosecutor continuing in his role as the prosecutor after Carr called him as a witness during the evidentiary hearing.  Carr, however, does not allege abandonment or that he was denied a procedurally fair setting.  As such, Carr has failed to establish that his post-conviction counsel provided ineffective assistance.

# Conclusion

[37]   In sum, we conclude that the post-conviction court did not err in denying Carr's PCR petition.

[38]   The judgment of the post-conviction court is affirmed.

Najam, J., and Mathias, J., concur.